**Tonda M. (Thacker) DEPEW,**
**Appellant–Plaintiff,**

v.

**Robert J. BURKLE, M.D.,**
**Appellee–Defendant.**

**No. 84A04–0203–CV–122.**

Court of Appeals of Indiana.

April 23, 2003.

Michael S. Miller, Catherine A. Kling, Miller Muller Mendelson & Kennedy, Indianapolis, IN, Attorneys for Appellant.

R. Steven Johnson, Sacopulos Johnson & Sacopulos, Terre Haute, IN, Attorney for Appellee.

**OPINION**

FRIEDLANDER, Judge.

Tonda M. Depew appeals from a grant of summary judgment in favor of Robert J. Burkle, M.D., in Depew's medical malpractice action against Burkle. Depew challenges the granting of Burkle's motion for summary judgment, presenting the following restated issues for review:

1. Does the release of the tortfeasor in an automobile accident operate also to release a physician who treated the plaintiff's injuries, and was sued for malpractice based upon that treatment?

2. If the physician was not released thereby, is he entitled to set-off as a result of the release of the tortfeasor in the underlying lawsuit?

We reverse and remand.

The facts favorable to Depew (the nonmoving party) are that on October 10, 1995, Depew was involved in an automobile accident with David Stigler. Among other injuries, Depew suffered fractures in both her right and left arms. Depew's malpractice claims against Burkle involve only the treatment of her right arm.

On October 11, 1995, the day after the accident, Dr. Burkle performed surgery on Depew, including an open reduction and internal fixation of her right arm. A pin

was inserted to stabilize the humerus bone. Shortly after the surgery, Depew told Burkle that she could feel the pin moving in her arm. Burkle told her that the pin was too short, and performed a second surgery to correct the problem. During the second surgery, Burkle "ream[ed] the bone so the rush rod or whatever it was called would fit." *Appellee's Appendix* at 46–47. After the second surgery, Depew could not move her elbow very much, but Burkle told her that the condition was temporary and would soon resolve itself. He also instructed Depew that the bone was weaker on one side and that she should take care to keep it immobilized until it healed. Approximately one to one-and-a-half weeks later, nurses removed the lower part of the bandages on Depew's right arm. Depew noticed for the first time that she could not raise her fingers, and that she had numbness around her thumb and little finger. She also noticed that she could not move her wrist up or down. She questioned Burkle about the problem. He informed her that during the second surgery, "when he was working on [the] arm he shaved a nerve." *Id.* at 52. A short time later a third surgery was performed on Depew's right arm. She was discharged from the hospital following her third surgery.

Sometime in 1996, Depew was admitted to the hospital because her weight had dropped to 75 pounds. While there, her right arm snapped near her elbow, at or near the location where Dr. Burkle had reamed out the bone during the second surgery. Depew was attended in the emergency room by a Dr. Ambrose. After looking at an x-ray of Depew's right arm, Dr. Ambrose told Depew that he would not have performed surgery on her arm in the first place, but would merely have put it in a cast. Depew told him about her wrist-drop condition and relayed to him what Dr. Burkle told her about shaving her nerve. Dr. Ambrose told her he would examine the nerve when he operated on her arm.

In June 1996, Drs. Ambrose and Mih operated on Depew's right arm, removing the rush rod and replacing it with a plate and six pins. Upon examining the radial nerve in her right arm, he discovered that the nerve had not been shaved, but instead had been nearly severed. They repaired the nerve during that operation. In June 1997, Dr. Ambrose performed a tendon transfer in Depew's right arm. The latter surgery resulted in the restoration of almost normal functioning in Depew's right wrist.

On August 25, 1997, Depew filed a complaint for damages against Stigler. In that complaint, Depew alleged that he had been negligent in causing the automobile collision on October 10, 1995. On August 4, 1999, Depew executed a settlement agreement with Stigler's insurer whereby she released him from any further liability, in exchange for $102,500.00. On September 8, 1999, Stigler and Depew filed a joint stipulation of dismissal.

With respect to her claims against Burkle, on January 23, 1997 Depew filed a proposed complaint with the Indiana Department of Insurance alleging that Burkle had committed medical malpractice. A medical review panel rendered its opinion on February 28, 2000. On May 8, 2000, Depew filed her complaint for damages against Burkle, alleging that he was negligent in treating her right arm. In his answer, Burkle asserted the following affirmative defense: "Plaintiff has been satisfied in full or in part for her damages and injuries, and Defendant is entitled to the defense of satisfaction, either in full or in part, as a result thereof." *Appellant's Appendix* at 15. On November 28, 2001, Burkle filed a motion for summary judg-

ment, designating in support thereof the settlement with Stigler and the ensuing release Depew signed in connection with that action. On February 13, 2002, the trial court granted Burkle's motion and entered summary judgment in his favor.

1.

Depew contends that the trial court erred in ruling that the release Depew executed in connection with her suit against Stigler also released Burkle.

We review a grant of summary judgment by applying the same legal standard as the trial court. *Conseco Fin. Servicing Corp. v. Old Nat. Bank,* 754 N.E.2d 997 (Ind.Ct.App.2001).

> [S]ummary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. The review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court.

*Tom–Wat, Inc. v. Fink,* 741 N.E.2d 343, 346 (Ind.2001) (citations omitted). Summary judgment is particularly appropriate where the relevant facts are not in dispute. *Conseco Fin. Servicing Corp. v. Old Nat. Bank,* 754 N.E.2d 997. We will reverse the trial court's ruling on a summary judgment motion when the trial court has incorrectly applied the law to undisputed facts. *Id.* We will affirm if the trial court's ruling is sustainable on any theory or basis found in the designated material. *Mackiewicz v. Metzger,* 750 N.E.2d 812 (Ind.Ct. App.2001), *trans. denied.*

The controversy before us centers upon the effect of the release executed by De-pew when she settled with Stigler. The critical question is, what was the scope and effect of that release? A brief review of the law of release as it relates to multiple tortfeasors is in order. The law in Indiana formerly was that the release of one joint tortfeasor released all other joint tortfeasors. *Estate of Spry v. Greg & Ken, Inc.,* 749 N.E.2d 1269 (Ind.Ct.App.2001). Our supreme court abrogated that rule in *Huffman v. Monroe County Cmty. Sch. Corp.,* 588 N.E.2d 1264 (Ind.1992). The rule that emerged from *Huffman* is still in force today, and was articulated by our supreme court as follows:

> A release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well. A release, as with any contract, should be interpreted according to the standard rules of contract law. Therefore, from this point forward, release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing.

*Id.* at 1267.

■ We note first that *Huffman* was decided in a case involving joint tortfeasors, and should be understood in that context. Joint tortfeasors are not, however, the same as successive tortfeasors. The actions of joint tortfeasors unite and combine to form a single injury. *See Marquez v. Mayer,* 727 N.E.2d 768 (Ind.Ct. App.2000), *trans. denied.* Successive tortfeasors, on the other hand, are those whose respective negligent acts are independent of one another and produce different injuries. *Cf. Cooper v. Robert Hall Clothes, Inc.,* 271 Ind. 63, 390 N.E.2d 155, 158 (1979) (addressing "independent and subsequent tort-feasor[s]"). After *Huff-*

*man,* where joint tortfeasors are involved, we examine the release itself to determine whether the plaintiff intended thereby to release all other tortfeasors. It appears that this has long been the rule in the case of successive tortfeasors. *See Wecker v. Kilmer,* 260 Ind. 198, 294 N.E.2d 132 (1973). Therefore, whether Burkle is classified as a successive tortfeasor or a joint tortfeasor, we examine the release itself to determine whether Depew intended thereby to absolve Burkle of liability.

Burkle cites two cases in support of his contention that a release that purports to release "all other persons and organizations" that might be liable does, in fact, do just that. *See Stemm v. Estate of Dunlap,* 717 N.E.2d 971 (Ind.Ct.App.1999); *Dobson v. Citizens Gas and Coke Utility,* 634 N.E.2d 1343 (Ind.Ct.App.1994). We note, however, that both of those cases involved joint tortfeasors, each of whom contributed to the original injury. In view of those facts, it is not surprising that this court determined that the plaintiff's release of liability covered all parties involved in the original tort. Moreover, we arrived at that conclusion after examining the language of the particular release in question.

Whatever principles may be extrapolated from *Stemm* and *Dobson,* it certainly is not accurate to say that they established a rule to the effect that when a plaintiff executes a release with one tortfeasor utilizing language such as "all" and "every", said release also operates as a release of all other tortfeasors. In fact, *Stemm* and *Dobson* did not modify, much less abrogate, the *Huffman* rule. Therefore, there is no reason to reject application of the *Huffman* rule in this case. *See Pelo v. Franklin College of Indiana,* 715 N.E.2d 365, 366 (Ind.1999) ("We perceive no valid reason to disregard the intent of parties to a release regardless of the theory under which multiple potentially liable parties may be pursued.")

 In reviewing the release signed by Depew, we apply well-settled principles. Two factors are generally controlling when determining the effect of an agreement that purports to operate as a release. First, we examine whether the injured party has received full satisfaction. *Wecker v. Kilmer,* 260 Ind. 198, 294 N.E.2d 132 (1973). Second, we examine whether the parties intended that the release be in full satisfaction of the injured party's claim, thus releasing all successive tortfeasors from liability. *Id.* Both are questions of fact and normally are to be determined by the jury. Also, a release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well. *Stemm v. Estate of Dunlap,* 717 N.E.2d 971.

 The parties disagree on the question of whether parol evidence is admissible in proving the parties' intent concerning a release's scope. Burkle notes that under the parol evidence rule, a court may not resort to parol evidence to discern the meaning of a document if the document itself is unambiguous on its face. Indeed, according to the parol evidence rule, extrinsic evidence is not admissible to clarify or modify the terms of a written instrument if the terms of the instrument are clear and unambiguous. *Cooper v. Cooper,* 730 N.E.2d 212 (Ind.Ct.App.2000).

The trial court in the instant case granted Burkle's motion to strike portions of affidavits filed by Depew and her attorney. The stricken portions consisted of the attorney's and Depew's respective representations that they did not intend for the Stigler release to apply to Burkle. It may reasonably be inferred that the trial court's ruling was based in large part upon

its conclusion that the release was unambiguous and therefore that parol evidence was inadmissible. This conclusion was erroneous because there is an exception to the parol evidence rule that applies here. Our supreme court explained that exception as follows:

> "The relations between two persons who have contracted in writing may be brought in issue collaterally in a suit between others. In such a case the parol evidence rule does not apply. The facts may be proved as they exist, regardless of the oral evidence varying the terms of any writing between the parties." *White v. Woods*, 183 Ind. 500, 109 N.E. 761, 763 (1915) (quoting McKelvey on Evidence, § 280; Greenleaf, Evidence, § 279). Thus, the inadmissibility of parol evidence to vary the terms of a written instrument does not apply to a controversy between a third party and one of the parties to the instrument.

*Cooper v. Cooper*, 730 N.E.2d at 216. Therefore, we may consider parol evidence in determining whether Depew intended to release Burkle when she signed the release of Stigler.

Following is the relevant language of the release signed by Depew:

> Plaintiff hereby absolutely and unconditionally releases and forever discharges David Stigler, and all other companies and persons, their respective successors and assigns, and whether known or unknown, from any and all claims, demands, actions, costs, damages and causes of action which the Plaintiff now has, ever had, or may have in the future on account of any and all damages, losses or injuries sustained by the Plaintiff by reason of an incident which occurred on October 10, 1995, it is understood and agreed by and among all of the parties to the within release that payment of said sum to the Plaintiff, and its accep-

> tance by the Plaintiff, is in full accord and satisfaction of a disputed claim and that the payment of said sum shall not in any way be construed as an admission of liability in said matter by any party hereto, and that liability is expressly denied by the party making said payment or on whose behalf said payment is made.

*Appellee's Appendix* at 5.

We observe first that both Depew and her attorney submitted affidavits averring that they did not intend that the release should apply to Burkle. We note also that the release terms were explicitly directed to "the parties to the within release", which in this case included only Depew as signer and Stigler as the named discharger. It is true that the release also purported to discharge "all other companies and persons, their respective successors and assigns, and whether known or unknown." *Id.* Burkle would have us interpret this clause to represent a discharge of all other parties, including Burkle, no matter how remote their alleged negligence was from that of the released tortfeasor. That certainly is one possible interpretation. On the other hand, Depew would have us interpret the release to convey the parties' intention that only Stigler was released by the instrument. This also is feasible interpretation of the release document. Is one more reasonable than the other? Our reading of *Wecker* convinces us that the determination is not ours to make.

We are aware of language in *Stemm* that might arguably be interpreted to support Burkle's contention that this issue should be resolved, as a matter of law, in his favor. That language indicates that a release "is plain and unambiguous as to who the parties intended to release where its terms provide that 'all claims' are given up against 'all persons' in conse-

quence of an accident. Language that releases 'all persons' does just that and is clear as long as no other terms are contradictory." *Stemm v. Estate of Dunlap,* 717 N.E.2d at 975. It must be remembered, however, that in *Stemm* both defendants were allegedly involved in the automobile accident that caused the plaintiff's injuries. Thus, the bases for alleged liability of the two defendants were closely related, and the release of one defendant and "all persons" from further liability for the injury-producing event is reasonably understood to release the other defendant. Here, on the other hand, the allegation of negligence against Stigler was, at least from Burkle's perspective, entirely unrelated to Burkle, whose alleged negligence occurred later and in an entirely separate setting. We refuse to adhere to a rigid rule that inclusion of the term "all" in a release with respect to the original tortfeasor operates to release everyone who may subsequently be responsible for exacerbating the original injury. Indeed, such would be inconsistent with sound public policy and with the spirit of *Huffman v. Monroe County Com. Sch. Corp.,* 588 N.E.2d 1264.

Perhaps more importantly, dogmatic adherence to such a view is at odds with *Wecker.* In *Wecker,* our supreme court held that this question requires a two-step inquiry, including whether the injured party received full satisfaction and whether the parties intended to release all successive tortfeasors from liability. The court clarified that "[b]oth are questions of fact and normally to be determined by the jury." *Wecker v. Kilmer,* 294 N.E.2d at 135. We perceive no reason in this case to depart from the *Wecker* presumption that the scope of a release and the parties' intent thereby are questions of fact that should be determined by a jury after considering the relevant evidence. Obviously, questions that must be resolved by a jury are not proper subjects for summary dis-

position. Therefore, the trial court erred in granting summary judgment in favor of Burkle.

### 2.

Having determined that the release of Stigler did not also operate as a release of Burkle, we must now determine, in the event Burkle is found to be liable to Depew, whether he is entitled to set-off with respect to the amount paid to Depew by Stigler.

We are guided on this issue by a case recently decided by this court. In *Marquez v. Mayer,* 727 N.E.2d 768, the plaintiff slipped and fell, breaking his arm. His arm was surgically repaired. He later filed a personal injury lawsuit against the owners of the property where he fell. He also filed a medical malpractice action against the surgeon who performed the surgery on his arm. He reached a settlement with the property owners and signed a release with respect to them. Thereafter, the malpractice action proceeded to trial. Before trial, the trial court granted the plaintiff's motion forbidding the physician to introduce evidence about the lawsuit and settlement with the property owners. At the close of trial, the jury returned a verdict in favor of the plaintiff. The issue of set-off arose on appeal.

Generally, where acts committed by multiple defendants cause a single injury to a plaintiff, a defendant against whom judgment is rendered at trial may set-off against those assessed damages the amount of any funds plaintiff received from any settling joint tortfeasor. *Id.* This serves to prevent a plaintiff from recovering twice for the same injury. *Id.* There, as here, the property owner and the medical provider were not joint tortfeasors because their actions did not unite to cause a single injury. Rather, the plaintiffs in both cases sustained the initial injury

when they broke their arms, and then sustained a second, separate injury as a result of subsequent, allegedly negligent medical treatment. In both cases, the original tortfeasor was liable for both injuries, while the medical providers were liable only for the second injury. *See id.*

In *Marquez*, we observed that although the plaintiff had sustained two distinct injuries, a threat of double recovery nevertheless existed because there remained a question whether he had already been compensated for both injuries. We noted that the plaintiff answered an interrogatory in connection with the case against the property owner to the effect that his injury included the condition that resulted from the alleged malpractice. That answer suggested to us that the plaintiff had sought compensation for both injuries and made a settlement on that basis. *Id.* We concluded that, if the plaintiff "was compensated in whole or in part for the [malpractice injury], for which [the medical provider] was found liable at trial, [the provider] is entitled to a credit to prevent a windfall to [the plaintiff]." *Id.* at 774. Thus, pursuant to *Marquez*, the next step in our analysis here entails examining the record for evidence that the settlement with Depew included compensation for the damages caused by Burkle's alleged negligence.

The record supplies, at best, incomplete details of the settlement with Stigler. The complaint against Burkle mentioned injuries that, if true, clearly resulted from the alleged malpractice (e.g., "permanent nerve injury"). *Appellant's Index* at 36. In contrast, the complaint against Stigler sought recovery for only general injuries, including "injuries to her person, pain and inconvenience, inability to live life normally, medical expenses, lost wages, future loss of income, and future medical expenses." *Appellee's Appendix* at 112. She sought judgment "in any amount suffi-cient to reasonably compensate her for her injuries and damages, for costs of this action, [and] for pre-judgment and post-judgment interest." *Id.* The general nature of these injuries and damages sheds little light on the question of whether the money paid by Stigler was intended as full or partial compensation for Burkle's alleged malpractice. Read in conjunction with the complaint against Burkle, the lack of any mention of nerve damage in the complaint against Stigler suggests that Burkle's alleged negligence was not contemplated in the Stigler action, or at least was not a major component of that settlement process. Such is not the only conclusion that may be drawn, however. In fact, on the materials before us, we are ill-equipped to draw any conclusions about that aspect of the settlement with Stigler.

We also lacked information sufficient to resolve that question in *Marquez*. In that case, we concluded that said evidentiary void necessitated affirming the trial court's denial of the defendant's motion for set-off. That case, however, arose in a different procedural posture. There, the matter proceeded to trial, which resulted in a verdict for the plaintiff. In response to that, the defendant filed a motion for set-off. We observed that the defendant bore the burden of proving the amount of set-off to which he was allegedly entitled. *Id.* We concluded that the defendant must suffer the consequences for having failed to do that. In the instant case, on the other hand, the trial court determined that the release signed in conjunction with the case against Stigler effectively ended the case against Burkle. Such rendered the set-off issue moot, regardless of how the grant of summary judgment may be viewed with respect to the issue of set-off. Because of this, the parties did not fully develop the facts in that regard. Moreover, the designated materials relevant to those questions do not conclusively establish whether and

how much set-off would be appropriate In other words, the record does not resolve the issue of whether Depew received whole or partial compensation for Burkle's alleged malpractice in her settlement with Stigler. *See Marquez v. Mayer,* 727 N.E.2d 768. That must be determined by the fact-finder after the parties have had an opportunity to further develop the evidence relevant to that issue upon remand.

Reversed and remanded.

NAJAM, J., and SHARPNACK, J., concur.