**Joe M. CUMMINS, Appellant–Plaintiff,**

v.

**Brent R. McINTOSH, M.D., Appellee–Defendant.**

No. 49A02–0309–CV–786.

Court of Appeals of Indiana.

Feb. 25, 2004.

---

Joseph J. Reiswerg, Indianapolis, IN, Attorney for Appellant.

Steven J. Cohen, Zeigler Cohen & Koch, Indianapolis, IN, Attorney for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-plaintiff Joe M. Cummins appeals the trial court's grant of summary judgment in favor of appellee-defendant Brent R. McIntosh, M.D. We remand.

### Issue

The dispositive issue is whether the master commissioner's findings leading to the trial court's judgment comply with Indiana Code Section 33–5.1–2–11(e).

### Facts and Procedural History

The facts most favorable to Cummins as the nonmoving party reveal that he fractured his right femur while deer hunting in October 1992. McIntosh repaired his femur with an intermedullary nail manufactured by Smith & Nephew North America ("Smith & Nephew"). As a different panel of this court explained in a previous opinion in this case,

> In November and December 1992, Cummins was off work, on crutches, and in physical therapy. On December 4, 1992, Dr. McIntosh took an x-ray of Cummins' femur. The x-ray report noted "a paucity of callus formation at the distal femoral fracture," and that "[i]t would be nice to see more callus formation." Dr. McIntosh took another x-ray on January 11, 1993, and noted an "interval improvement in the callus formation," and he instructed Cummins to "gradually increase weight bearing." Cummins went off his crutches in late March 1993, and was released back to work in late April 1993.
>
> On June 6, 1993, Cummins "felt something strange in his leg." Dr. McIntosh took an x-ray, and discovered that the intermedullary nail had broken. Dr. McIntosh removed the nail and replaced it with a larger one.
>
> After the second surgery, Cummins experienced more turmoil than he had with the first nail, and it was discovered that there was a misalignment, that the fracture was causing pain by putting stress on the knee. Cummins opted to see another physician, Dr. Frank Kolisek who explained the misalignment, and cut a wedge out of Cummins' femur and changed the angle of the bone. After six months, Cummins' pain had not subsided and Dr. Kolisek referred Cummins to Dr. Kevin Scheid. Dr. Scheid explained that Cummins' bones were not

healing properly and a bone graft would have to be performed. Dr. Scheid placed a plate outside Cummins' femur and secured it with screws.

On June 9, 1995, Cummins filed his proposed complaint with the Indiana Department of Insurance, alleging that Dr. McIntosh breached the applicable standard of care by permitting Cummins to return to work and to full weight bearing without the benefit of x-rays to determine if the bones had properly healed. The Medical Review Panel issued its opinion finding that "the evidence does not support the conclusion that Defendant, Brent R. McIntosh, M.D., failed to meet the applicable standard of care as charged in the Complaint."

*McIntosh v. Cummins*, 759 N.E.2d 1180, 1182–83 (Ind.Ct.App.2001) (footnotes, parentheticals, and citations omitted), *trans. denied* (2002). Also on June 9, 1995, Cummins filed a complaint in the Johnson Circuit Court against Smith & Nephew, alleging that the intermedullary nail was negligently designed, sold, and manufactured, as well as "defective and unreasonably dangerous." Appellant's App. at 226–28. Cummins's suit against Smith & Nephew was subsequently removed to federal court.

On November 5, 1998, Cummins signed a release that reads in relevant part as follows:

### RELEASE OF ALL CLAIMS

**KNOW ALL PERSONS BY THESE PRESENTS:**

That Joe M. Cummins, being of lawful age, for the sole consideration of Six Thousand and No/100 Dollars ($6,000.00) to the undersigned in hand paid, receipt whereof is hereby acknowledged, does hereby individually and for his heirs,

executors, administrators, successors and assigns

**RELEASE, ACQUIT AND FOREVER DISCHARGE** Smith & Nephew North America and Smith & Nephew Richards, Inc., d/b/a Smith & Nephew North America, and their agents, servants, successors, heirs, executors, administrators, insurers, partners, limited partners, and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of services, expenses, attorney fees, and compensation whatsoever, which the undersigned now has OR WHICH MAY HEREAFTER ACCRUE on account of or in any growing out of any and ALL KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN, ANTICIPATED AND UNANTICIPATED bodily and personal injuries and the consequences thereof resulting or to result from an incident which occurred on or about June 9, 1993, when the Recon Nail (which was implanted in Joe M. Cummins' leg in October of 1992) failed.

**IT IS UNDERSTOOD AND AGREED** that this settlement is a compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releases deny liability therefore and intend merely to avoid further litigation and buy their peace.

**THE UNDERSIGNED HEREBY DECLARES AND REPRESENTS** that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release, it is understood and agreed that the undersigned relies wholly upon the undersigned's judgment, belief and knowledge

of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

**THE UNDERSIGNED FURTHER DECLARES AND REPRESENTS** that no promise, inducement or agreement not herein expressed has been made to the undersigned and that this Release contains the entire agreement between the parties hereto, and that the terms of the Release are contractual and not a mere recital.

. . . .

**THE UNDERSIGNED FURTHER DECLARES AND REPRESENTS** that he will dismiss with prejudice the action in the United States District Court, Southern District of Indiana, Indianapolis Division [against Smith & Nephew].

**THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed and delivered this 5 day of *Nov.,* 1998.

> **CAUTION: READ BEFORE SIGNING BELOW**
> /s/ Joe M. Cummins

Appellant's App. at 229–31.

On May 28, 1999, Cummins filed a complaint against McIntosh in Marion Superior Court alleging that he was negligent in allowing Cummins "to return to work and place weight on his fractured leg" and "in removing the broken nail at the time of surgical replacement." *Id.* at 13. In June 1999, McIntosh filed a motion for summary judgment in which he asserted that Cummins had failed to establish the existence of a genuine issue of material fact regarding his conformance with the applicable standard of care. The trial court denied McIntosh's motion, and this court affirmed on interlocutory appeal. *See McIntosh,* 759 N.E.2d at 1185.

In 2002, McIntosh became aware of the release that Cummins had signed in the Smith & Nephew proceeding. On December 18, 2002, McIntosh filed a motion for summary judgment in which he asserted that Cummins had "barred himself from pursuing any and all claims against any and all persons that purport to arise from the occurrence in question." Appellant's App. at 203. In support of his motion, McIntosh designated Cummins's release.

On February 5, 2003, Cummins filed a response to McIntosh's motion. In support of his response, Cummins designated the following affidavit:

### AFFIDAVIT OF PLAINTIFF JOE M. CUMMINS

Comes now the Plaintiff Joe M. Cummins and being duly sworn upon his oath deposes and says as follows:

1. That I, Joe M. Cummins, am the Plaintiff in [this cause].

2. Further, that I was the Plaintiff of the cause [involving Smith & Nephew].

3. This Affidavit is made upon my own personal knowledge and belief as the Plaintiff in the two (2) above referenced cases and fully reflects my intention as to the two mat[t]ers.

4. The case pending in this Court involves alleged acts of medical negligence committed by the Defendant Brent R. McIntosh, M.D.

5. The matter filed in Federal Court was a products liability claim filed against [Smith & Nephew] as the result of the alleged failure of an intermedul[l]ary rod inserted into my femur by Dr. McIntosh. This claim was settled for $6,000.00 with [Smith & Nephew] after a settlement conference with

[Smith & Nephew] and V. Sue Shields, Magistrate, wherein it became evident that [Smith & Nephew] had no liability. The intent of the settlement was to aid in deferring the costs of the claim against Dr. McIntosh.

6. The release signed in the case was to release *ONLY* the Defendant Smith & Nephew ... and there was no intent to release Dr. McIntosh from the independently filed action against him.

7. The complaint filed against Dr. McIntosh with the Department of Insurance and in this court only has his name as the Defendant and the case in Federal Court only bears the name of Smith & Nephew ... as the Defendant.

Further affiant sayeth naught.

*Id.* at 257–58.

On April 14, 2003, Master Commissioner Cheryl Boone and Judge Cynthia Ayers both signed the following entry of summary judgment:

This matter comes before the Court on the Motion for Summary Judgment filed by the Defendant, Brent R. McIntosh, M.D., on December 18, 2002. The Court having heard argument of counsel for the parties at a hearing held on Defendant's Motion on February 19, 2003 and reviewed the evidence designated by the parties and the applicable law, now finds that Defendant's Motion should be granted for the reason that there is no genuine issue of material fact and the Defendant is entitled to summary judgment as a matter of law.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that summary judgment be and hereby is entered in favor of the Defendant, Brent R. McIntosh, and against the Plaintiff, Joe M. Cummins, costs paid.

*Id.* at 277. The entry is stamped "RECOMMENDED FOR APPROVAL" above Commissioner Boone's signature and "APPROVED AND ORDERED" above Judge Ayers's signature. This appeal ensued.

### Discussion and Decision

Indiana Code Section 33–5.1–2–11(e) provides that a master commissioner appointed by the Marion Superior Court

has the powers and duties prescribed for a magistrate under IC 33–4–7–4 through IC 33–4–7–8. A master commissioner *shall report the findings in each of the matters before the master commissioner in writing* to the judge or judges of the division to which the master commissioner is assigned or as designed by rules of the court.

(Emphasis added.) Indiana Code Section 33–4–7–8(a) provides in pertinent part that "a magistrate shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court. The court shall enter the final order." [1]

This court has approved the practice of trial court judges adopting findings submitted by their master commissioners. *See Garage Doors of Indpls., Inc. v. Morton*, 682 N.E.2d 1296, 1300–01 (Ind.Ct.App. 1997), *trans. denied* (1998). Cummins asserts that Master Commissioner Boone's recommended entry of summary judgment should have "been more thorough" and characterizes it as "form without substance." Appellant's Reply Br. at 7. In this instance, we agree.

On the one hand, we acknowledge that a trial court judge need not enter findings of fact in deciding a motion for summary

---

1. Indiana Code Sections 33–4–7–4(14) and 33–4–7–8(b) provide that a magistrate presiding at a criminal trial may enter a final order.

judgment under Trial Rule 56. *See* Ind. Trial Rule 52(A) (providing that "[f]indings of fact are unnecessary on decisions of motions under Rules 12 or 56"); *see also Unincorporated Operating Div. of Ind. Newspapers, Inc. v. Trustees of Ind. Univ.*, 787 N.E.2d 893, 900 (Ind.Ct.App. 2003) (noting that Ind. Trial Rule 56(C) does not require trial court to enter findings of fact). We further acknowledge that a trial court judge is not required to adopt and incorporate a master commissioner's findings in her order or entry of judgment.

On the other hand, we have long recognized that "a commissioner acts as an instrumentality to inform and assist the court by conducting hearings and reporting facts or conclusions to the trial court; however, only the court has inherent authority to make binding orders or judgments." *Creedon v. Asher Truck & Trailer, Inc.*, 535 N.E.2d 148, 149 (Ind.Ct.App. 1989). Indeed, Indiana Code Section 33–5.1–2–11(e) requires that a master commissioner "inform and assist" the trial court judge by reporting her findings in writing. Absent this requirement, there would be no assurance that a master commissioner has communicated the relevant facts upon which she has based her recommended order or judgment to the trial court judge, who is ultimately responsible for entering "binding orders or judgments." In other words, this statute ensures that master commissioners diligently perform their duties and that trial court judges do not simply "rubber stamp" their recommendations.

Here, the master commissioner found only that McIntosh's motion for summary

judgment should be granted without informing the trial court judge of the facts upon which her decision was based. *See* Ind. Trial Rule 56(C) (requiring parties to designate matters in support of and in opposition to summary judgment motion). This finding was insufficient to inform or assist the trial court judge in determining whether there was a genuine issue as to any material fact and whether McIntosh was entitled to judgment as a matter of law. *See id.* (summary judgment standard). Given that the trial court judge relied on and adopted this insufficient finding in entering summary judgment in favor of McIntosh, we conclude that remanding for more specific findings is the appropriate means of ensuring that the master commissioner complies with both the letter and the spirit of Indiana Code Section 33–5.1–2–11(e) and that the trial court judge is fully informed before she enters an order on McIntosh's motion for summary judgment. *See* Ind. Appellate Rule 66(C) (providing that appellate court "may, with respect to some or all of the parties or issues, in whole or in part: .... (7) order correction of a judgment or order; ... and (10) grant any other appropriate relief"). The master commissioner's amended findings need not be exhaustive, but they must be sufficient to inform the trial court judge of the basis for her recommendation.

Remanded.[2]

ROBB, J., concur.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Even if, as clearly implied by the majority opinion, the summary judgment hearing

---

**2.** Given our resolution of this issue, we need not address Cummins's argument that the trial court erred in granting McIntosh's motion for summary judgment. On remand, we direct the trial court and the parties to *Deckard* *v. General Motors Corp.*, 307 F.3d 556 (7th Cir.2002), which provides a comprehensive analysis of the parol evidence rule as it relates to releases and third parties under Indiana law.

in this case was an "evidentiary hearing" as contemplated in I.C. § 33–4–7–8,[3] I do not find the magistrate's thin recitation to be reversibly inadequate.

The magistrate, as noted by the majority, stated that "at a hearing held on Defendant's Motion ... [she] reviewed the evidence designated by the parties." The magistrate then concluded that following such review she determined that there was no genuine issue of material fact.

The self-serving affidavit by Cummins with respect to his "intention" in executing the release is belied by the clear and unmistakable words of the release itself. That release clearly states that not only is Smith & Nephew released, but also *all other persons ...* from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of services, expenses, attorney fees, and compensation whatsoever ... on account of" the failure of the Recon nail which Dr. McIntosh implanted. Appendix at 229. The release before us is therefore virtually identical in its language and effect as those considered in *Estate of Spry v. Greg & Ken, Inc.,* 749 N.E.2d 1269 (Ind.Ct.App.2001), *Stemm v. Estate of Dunlap,* 717 N.E.2d 971 (Ind.Ct.App.1999), and *Dobson v. Citizens Gas and Coke Utility,* 634 N.E.2d 1343 (Ind.Ct.App.1994). I find those cases, which held that release of a named party together with "all other persons" or "any other persons" released unnamed persons, to be dispositive of the issue. *But see Depew v. Burkle,* 786 N.E.2d 1144 (Ind.Ct.App.2003), *trans denied.*

In the case before us, the release itself is the sole piece of relevant evidence designated by the parties. Its legal effect is apparent upon the face of it. The magistrate's failure to state the obvious in find-ings submitted to the court is at worst harmless because on its face the summary judgment is unassailable and is correct as a matter of law.

I would affirm the summary judgment in favor of McIntosh.

---

3. I have serious doubts that, with regard to summary judgment proceedings, a magistrate is required to make findings and submit those findings to the regular judge of the court for approval.