**Joe M. CUMMINS, Appellant–Plaintiff,**

**v.**

**Brent R. McINTOSH, M.D., Appellee–Defendant.**

**No. 49A04–0506–CV–331.**

Court of Appeals of Indiana.

April 24, 2006.

Joseph J. Reiswerg, Indianapolis, for Appellant.

Steven J. Cohen, Zeigler Cohen & Koch, Indianapolis, for Appellee.

## OPINION

ROBB, Judge.

Joe Cummins filed a complaint against Brent McIntosh, M.D. alleging medical malpractice. Dr. McIntosh filed a motion for summary judgment, which motion the trial court granted. Cummins now appeals. We reverse and remand.

### Issue

The sole issue raised by Cummins is whether the trial court properly granted summary judgment for Dr. McIntosh.

*Facts and Procedural History* [1]

The facts, taken in part from previous opinions in this case, are as follows:

[I]n October 1992, [Cummins] fractured his right femur and hip while deer hunting near Greenwood, Indiana. As a result of his injuries, Dr. McIntosh performed surgery on Cummins, inserting an intramedullary nail in Cummins' femur and fixating his hip with screws. Cummins was hospitalized for approximately one month.

In November and December 1992, Cummins was off work, on crutches, and in physical therapy. On December 4, 1992, Dr. McIntosh took an x-ray of Cummins' femur. The x-ray report noted "a paucity of callus formation at the distal femoral fracture," and that "[i]t would be nice to see more callus formation." Dr. McIntosh took another x-ray on January 11, 1993, and noted an "interval improvement in the callus formation," and he instructed Cummins to "gradually increase weight bearing." Cummins went off his crutches in late March 1993, and was released back to work in late April 1993.

On June 6, 1993, Cummins "felt something strange in his leg." Dr. McIntosh took an x-ray, and discovered that the intermedullary nail had broken. Dr. McIntosh removed the nail and replaced it with a larger one.

After the second surgery, Cummins experienced more turmoil than he had with the first nail, and it was discovered that there was a misalignment, that the fracture was causing pain by putting stress on the knee. Cummins opted to see another physician, Dr. Frank Kolisek who explained the misalignment, and cut a wedge out of Cummins' femur and changed the angle of the bone. After six months, Cummins' pain had not subsided and Dr. Kolisek referred Cummins to Dr. Kevin Scheid. Dr. Scheid explained that Cummins' bones were not healing properly and a bone graft would have to be performed. Dr. Scheid placed a plate outside Cummins' femur and secured it with screws.

On June 9, 1995, Cummins filed his proposed complaint with the Indiana Department of Insurance, alleging that Dr. McIntosh breached the applicable standard of care by permitting Cummins to return to work and to full weight bearing without the benefit of x-rays to determine if the bones had properly healed. The Medical Review Panel issued its opinion finding that "the evidence does not support the conclusion that Defendant, Brent R. McIntosh, M.D., failed to meet the applicable standard of care as charged in the Complaint."

*McIntosh v. Cummins,* 759 N.E.2d 1180, 1182–83 (Ind.Ct.App.2001), *trans. denied* (footnotes, parantheticals, and citations omitted) (hereinafter referred to as "Appeal I").

Also on June 9, 1995, Cummins filed a complaint in the Johnson Circuit Court against Smith & Nephew, alleging that the intermedullary nail was negligently designed, sold, and manufactured, as well as "defective and unreasonably dangerous." Cummins's suit against Smith & Nephew was subsequently removed to federal court.

*Cummins v. McIntosh,* 803 N.E.2d 1155, 1157 (Ind.Ct.App.2004) (hereinafter referred to as "Appeal II").

1. We held oral argument in this case in Indianapolis, Indiana, on February 24, 2006, as part of an Indiana Trial Lawyer's Association program. We commend counsel for their advocacy.

On November 5, 1998, Cummins signed a release as part of a settlement in the federal case against Smith & Nephew. The release reads in relevant part:

### RELEASE OF ALL CLAIMS

**KNOW ALL PERSONS BY THESE PRESENTS:**

That Joe M. Cummins, being of lawful age, for the sole consideration of Six Thousand and No/100 Dollars ($6,000.00) to the undersigned in hand paid, receipt whereof is hereby acknowledged, does hereby individually and for his heirs, executors, administrators, successors and assigns

**RELEASE, ACQUIT AND FOREVER DISCHARGE** Smith & Nephew North America and Smith & Nephew Richards, Inc., d/b/a Smith & Nephew North America, and their agents, servants, successors, heirs, executors, administrators, insurers, partners, limited partners, and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of services, expenses, attorney fees, and compensation whatsoever, which the undersigned now has OR WHICH MAY HEREAFTER ACCRUE on account of or in any [way] growing out of any and ALL KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN, ANTICIPATED AND UNANTICIPATED bodily and personal injuries and the consequences thereof resulting or to result from an incident which occurred on or about June 9, 1993, when the Recon Nail (which was implanted in Joe M. Cummins' leg in October of 1992) failed.

**IT IS UNDERSTOOD AND AGREED** that this settlement is a compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releasees deny liability therefor and intend merely to avoid further litigation and buy their peace.

**THE UNDERSIGNED HEREBY DECLARES AND REPRESENTS** that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release, it is understood and agreed that the undersigned relies wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

**THE UNDERSIGNED FURTHER DECLARES AND REPRESENTS** that no promise, inducement or agreement not herein expressed has been made to the undersigned and that this Release contains the entire agreement between the parties hereto, and that the terms of the Release are contractual and not a mere recital.

. . .

**THE UNDERSIGNED FURTHER DECLARES AND REPRESENTS** that he will dismiss with prejudice the action in the United States District Court, Southern District of Indiana, Indianapolis Division entitled Joe M. Cummins, Plaintiff, v. Smith & Nephew Richards, Inc. d/b/a Smith & Nephew North America, Defendant, Cause No. IP95–903–C–M/S.

**THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed and delivered this 5 day of Nov., 1998.

### CAUTION: READ BEFORE SIGNING BELOW

/s/ Joe M. Cummins

Appellant's Appendix in Appeal II at 229–31.[2]

On May 28, 1999, Cummins filed a complaint against Dr. McIntosh in Marion Superior Court alleging that he was negligent in allowing Cummins "to return to work and place weight on his fractured leg [and] in removing the broken nail at the time of surgical replacement." *Id.* at 13. In June 1999, Dr. McIntosh filed a motion for summary judgment in which he asserted that Cummins had failed to establish the existence of a genuine issue of material fact regarding whether he conformed to the applicable standard of care. The trial court denied Dr. McIntosh's motion, and this court affirmed on interlocutory appeal. *McIntosh,* 759 N.E.2d at 1185.

In 2002, Dr. McIntosh became aware of the release that Cummins had signed in the Smith & Nephew proceeding. On December 18, 2002, McIntosh filed a motion for summary judgment, asserting that Cummins had "barred himself from pursuing any and all claims against any and all persons that purport to arise from the occurrence in question." Appellant's App. in Appeal II at 203. In support of his motion, McIntosh designated *inter alia* Cummins' release.

On February 5, 2003, Cummins filed a response to McIntosh's motion, designating his affidavit in which he avers it was not his intent when signing the release to release Dr. McIntosh from liability.

On April 14, 2003, Master Commissioner Cheryl Boone and Judge Cynthia Ayers both signed an entry granting summary judgment to Dr. McIntosh. Cummins appealed, and because of a procedural defect in the summary judgment order, we remanded to the trial court.[3] On remand, the parties submitted proposed findings of fact and conclusions of law, and the trial court entered the following order, which, after recitation of the salient facts, concluded as follows:

### CONCLUSIONS OF LAW

1. In *Huffman v. Monroe County Community School Corporation* (588 N.E.2d 1264 (Ind.1992)), the Indiana Supreme Court abrogated the principle of law that a release of one joint tortfeasor automatically releases all other joint tortfeasors. The Court held that a release should henceforth be interpreted according to the standard rules of contract law with the parties' intentions regarding the purpose of the document governing. A release executed in exchange for proper consideration works to release only those parties to the agreement "unless it is clear from the document that others are to be released as well."

---

2. Cummins filed a motion with this court to incorporate into the record of this appeal the appendices filed in the previous appeals. Cummins' motion was granted, and therefore, we have before us three separate appendices, which will be designated herein as "Appellant's App. in Appeal I," "Appellant's App. in Appeal II" and "Appellant's App."

3. The entry, which found only that the motion should be granted without also stating the

facts upon which the recommendation was based, did not comply with Indiana Code section 33–5.1–2–11(e), which provides that a commissioner shall report the findings in each of the matters before the commissioner in writing to the judge. *Cummins,* 803 N.E.2d at 1160. We therefore remanded for the master commissioner to enter more specific findings. *Id.*

2. Language in a release document which releases "all persons" is clear as long as no other terms are contradictory.

3. The test for determining whether an ambiguity exists is whether reasonable persons would find the contract subject to more than one interpretation. If the language of a release document is clear and unambiguous, the intent of the parties is to be determined by reviewing the language contained between the four corners of the instrument.

4. A reasonable person construing the "Release of All Claims," signed by [Cummins], would be led to the interpretation: that [Cummins] was releasing "all other persons . . . from any and all claims, actions, causes of action, demands, rights, damages . . . on account of or in any [way] growing out of any and all known and unknown, foreseen and unforeseen, anticipated and unanticipated bodily and personal injuries and the consequences thereof resulting or to result from an incident which occurred on or about June 9, 1993, when the Recon nail (which was [implanted] in [Cummins'] leg in October of 1992) failed."

5. The "Release of All Claims," signed by [Cummins], is clear and unambiguous. No language in the "Release of All Claims" contradicts the notion that "all other persons," including [Dr. McIntosh], were also being released for damages caused by the breaking of the nail on June 9, 1993.

6. There exists no genuine issue as to any material fact and [Dr. McIntosh] is entitled to judgment as a matter of law for the reason that

[Cummins] has executed a full, final "Release of All Claims," whereby he has barred himself from pursuing any and all claims against any and all persons that purport to arise from the occurrence in questions, [sic] including [Dr. McIntosh].

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that Judgment is entered for [Dr. McIntosh]. There is no just reason for delay. [Dr. McIntosh's] Second Motion for Summary Judgment is granted.

Appellant's App. at 64–66.[4] Cummins again appeals to this court.

*Discussion and Decision*

I. Summary Judgment Standard of Review

On appeal from a grant of summary judgment, our standard of review is the same as that of the trial court. *Wilcox Mfg. Group, Inc. v. Marketing Services of Indiana, Inc.*, 832 N.E.2d 559, 562 (Ind.Ct. App.2005). We stand in the shoes of the trial court and apply a *de novo* standard of review. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Robson v. Texas Eastern Corp.*, 833 N.E.2d 461, 466 (Ind.Ct.App.2005), *trans. denied;* Ind. Trial Rule 5(H). Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 5(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *Wilcox Mfg. Group, Inc.*, 832 N.E.2d at 562. We view the pleadings and designated materials in the light most favorable to

---

4. Contrary to Indiana Appellate Rules 46(A)(10) and 46(B), neither party included a copy of the written opinion on appeal.

the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind.Ct. App.2005), *trans. denied.*

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Wilcox Mfg. Group, Inc.,* 832 N.E.2d at 562. Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Troxel Equip. Co.,* 833 N.E.2d at 40. We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

### II. Effect of Release

Cummins contends that the trial court erred in granting summary judgment to Dr. McIntosh based upon his execution of a release in the federal lawsuit against Smith & Nephew. He contends that, by the clear and unambiguous terms of the release, Dr. McIntosh is not included in the release, and therefore, Dr. McIntosh is not entitled to summary judgment as a matter of law. He also contends that if the release is ambiguous, his affidavit regarding the intent of the parties to the release is relevant and raises at least a genuine issue of material fact precluding entry of summary judgment.

### A. Law Regarding Releases

█ We note first the difference between joint and successive tortfeasors: "The actions of joint tortfeasors unite and combine to form a single injury. Successive tortfeasors, on the other hand, are those whose respective negligent acts are independent of one another and produce different injuries." *Depew v. Burkle,* 786 N.E.2d 1144, 1147 (Ind.Ct.App.2003), *trans. denied* (citations omitted). Indiana traditionally adhered to the common law doctrine that release of one joint tortfeasor operated as a release of all other tortfeasors, even in the face of express agreements between the parties that it should not prevent the victim from proceeding against other actors. *See Bellew v. Byers,* 272 Ind. 37, 396 N.E.2d 335, 336–37 (1979). In *Huffman v. Monroe County Cmty. Sch. Corp.,* 588 N.E.2d 1264 (Ind.1992), our supreme court abandoned the common law rule in favor of the rule set forth in the Restatement (Second) of Torts: " 'a valid release of one tortfeasor from liability for harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them.' " *Id.* at 1267 (quoting Restatement (Second) of Torts § 885(1)). In adopting this rule, the court stated:

> The effect of this rule is to give life to the parties' intent. A release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well. A release, as with any contract, should be interpreted according to the standard rules of contract law. Therefore, from this point forward, release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing.

*Id.* That had apparently long been the rule for successive tortfeasors. In *Wecker v. Kilmer,* 260 Ind. 198, 294 N.E.2d 132 (1973), our supreme court was called upon to answer a certified question from the

Seventh Circuit Court of Appeals regarding whether a general release of an alleged original tortfeasor accrued to the benefit of a subsequent tortfeasor, as well. The court held that the release alone did not bar the claim asserted by the plaintiff against the subsequent tortfeasor: "[t]he controlling factors are whether the plaintiff in fact received full satisfaction for his injuries and whether the parties to the release intended it to be in full satisfaction, both of which require a factual determination beyond the face of the instrument." *Id.* at 135.

■■■ In general, if the language of a contract is unambiguous, the intent of the parties is determined from the four corners of the document. *Wagner v. Spurlock*, 803 N.E.2d 1174, 1179 (Ind.Ct.App. 2004). However, when the language in a contract is ambiguous or uncertain, its meaning is to be determined by the consideration of extrinsic evidence. *Perfect v. McAndrew*, 798 N.E.2d 470, 479 (Ind.Ct. App.2003). A contract is ambiguous only where a reasonable person could find its terms susceptible to more than one interpretation. *Wagner*, 803 N.E.2d at 1179.

### B. Language of the Release

■■ Cummins first contends that the language of the release is unambiguous in *not* including Dr. McIntosh within its terms, whereas Dr. McIntosh contends that the release is unambiguous in *including* him within its terms.

Cummins contends that the release contains sufficient limiting language so as to make it clear from the release itself that it was intended only to release Smith & Nephew in the products liability action. The release is for "an incident which occurred on or about June 9, 1993, when the Recon Nail (which was implanted in Joe M. Cummins' leg in October of 1992) failed." Appellant's App. in Appeal II at

229. Cummins contends that the reference to the specific dates when the nail was implanted and when it failed excludes Dr. McIntosh's conduct from the release because the allegations against him are for negligence occurring in April of 1993 when Dr. McIntosh allowed Cummins to place weight on his leg and return to work, as well as negligence following the failure of the nail in removing the nail at the time of surgical replacement. Cummins' complaint against Dr. McIntosh alleges, in pertinent part, as follows:

3. On October 23, 1992, [Cummins] sustained a broken right leg and two (2) days later Dr. McIntosh performed internal fixation using a Russell–Taylor Recon Nail made by Smith & Nephew North America.

4. In the spring of 1993, Dr. McIntosh released [Cummins] to work without restriction even though x-rays reveal that the fracture had not fully healed.

5. The nail is not a weight-bearing device and on June 9, 1993, the rod fractured as a result of excessive loading, and necessitating a second surgery, the implantation of a new and smaller nail.

6. [Dr. McIntosh] was negligent in allowing [Cummins] to return to work and place weight on the fractured leg when, in fact, the fracture had not healed. Additionally, [Dr. McIntosh] was negligent in removing the broken nail at the time of surgical replacement.

Appellant's App. in Appeal I at 7–8. Cummins also contends that even if this limiting language is not enough, "[n]owhere in this release language does it purport or even imply that [Dr. McIntosh] is to be released." Brief of Plaintiff–Appellant, Joe M. Cummins at 9. Dr. McIntosh contends that the plain language of the re-

lease includes him within its terms, specifically, the following language:

> **RELEASE, ACQUIT AND FOREVER DISCHARGE** Smith & Nephew North America and Smith & Nephew Richards, Inc., d/b/a Smith & Nephew North America, ... and all other persons ... of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of services, expenses, attorney fees, and compensation whatsoever, which the undersigned now has OR WHICH MAY HEREAFTER ACCRUE on account of or in any [way] growing out of any and ALL KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN, ANTICIPATED AND UNANTICIPATED bodily and personal injuries and the consequences thereof resulting or to result from an incident which occurred on or about June 9, 1993, when the Recon Nail (which was implanted in Joe M. Cummins' leg in October of 1992) failed.

Appellant's App. in Appeal II at 229 (emphasis added).

Several cases since *Huffman* have addressed releases similar to the one at issue herein. In *Dobson v. Citizens Gas and Coke Util.*, 634 N.E.2d 1343 (Ind.Ct.App. 1994), a joint tortfeasor case, the plaintiff was injured when he was a passenger in a car which spun out of control and hit a pole upon striking objects in the road later thought to be pieces of coal from the utility's premises. The plaintiff settled with the driver's insurance carrier and executed a release releasing the driver "and all other persons, firms or corporations liable or who might be claimed to be liable ... on account of all injuries ... which have resulted ... from an automobile accident which occurred on or about September 22, 1990, Indianapolis, Indiana." *Id.* at 1345. The plaintiff subsequently sued the utility for negligence in allowing the accumulation of coal on a public street adjacent to its business. The utility moved for summary judgment on the basis of the release. We held that the language of the release was clear and unambiguous and included the utility, a corporation against whom the plaintiff was asserting a claim resulting from the accident. *Id.* Moreover, "[n]owhere in the release does the language indicate that it did not preclude claims against others"; therefore, summary judgment for the utility was appropriate. *Id.*

In *Stemm v. Estate of Dunlap*, 717 N.E.2d 971 (Ind.Ct.App.1999), also a case involving joint tortfeasors, the plaintiff was a passenger in a vehicle that was involved in a collision. The plaintiff entered into a settlement agreement with the driver of the vehicle in which he was a passenger and executed a release wherein he released the driver "and all other persons and organizations who are or who might be liable, from all claims for all damages which [he] sustained as the result of an accident which occurred on or about February 16, 1995." *Id.* at 973. The plaintiff then filed a lawsuit against the other driver, who moved for summary judgment on the basis of the release. We held that the facts of this case were analogous to those in *Dobson*, that the language of the release was clear and unambiguous in including the second driver, and that the release did not indicate that it did not preclude claims against others. *Id.* at 976. Accordingly, we reversed the trial court's denial of the second driver's motion for summary judgment. *Id.*

In *Arnold v. Burton*, 651 N.E.2d 1202 (Ind.Ct.App.1995), *trans. denied*, the plaintiff was injured in a fall at a store. Dr. Arnold subsequently treated and allegedly exacerbated her injury. *Arnold* was therefore decided in the context of successive tortfeasors. The plaintiff filed a complaint against the store and eventually settled

her lawsuit and signed a release purporting to release the store and "all other persons ... from any and all ... claims ... sustained ... as a result of said incident." *Id.* at 1204. The plaintiff subsequently filed a malpractice action against Dr. Arnold related to his treatment of her injury. Dr. Arnold moved for summary judgment, asserting the above language from the release. The trial court denied the motion. On appeal, we noted that the release also specifically mentioned, by name, court, and cause number, the litigation against the store, that it would be dismissed with prejudice, and that "the aforesaid ... settlement is expressly limited and restricted to the aforesaid pending action ... and neither the existence nor content ... may be used under any circumstances or for any reason by any ... person in any other judicial proceeding arising out of the aforesaid incident." *Id.* Because specific terms control over general terms when interpreting a contract, the general nature of the "release all other persons" language must yield to the more specific words limiting the release to the litigation against the store. *Id.* at 1205 (citing *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind.Ct.App.1993)).

In *Depew*, a case also involving successive tortfeasors, the plaintiff was involved in an automobile accident with another motorist and was injured. The following day, Dr. Burkle performed surgery on the plaintiff's right arm and allegedly exacerbated the injuries she sustained in the crash. The plaintiff filed a lawsuit against the driver and initiated medical malpractice proceedings against Dr. Burkle. The plaintiff settled her case against the driver and signed a release that released the driver and

> all other companies and persons, their respective successors and assigns, and whether known or unknown, from any and all claims, demands, actions, costs,

damages and causes of action which the Plaintiff now has, ever had, or may have in the future on account of any and all damages, losses or injuries sustained by the Plaintiff by reason of an incident which occurred on October 10, 1995, it is understood and agreed by and among all of the parties to the within release that payment of said sum to the Plaintiff, and its acceptance by the Plaintiff, is in full accord and satisfaction of a disputed claim and that the payment of said sum shall not in any way be construed as an admission of liability in said matter by any party hereto, and that liability is expressly denied by the party making said payment or on whose behalf said payment is made.

786 N.E.2d at 1149. In the malpractice case, Dr. Burkle asserted the release as an affirmative defense and later filed a motion for summary judgment on that basis. The trial court granted summary judgment to Dr. Burkle. On appeal, the plaintiff argued that the trial court erred in finding that the release she executed in connection with her suit against the driver also released Dr. Burkle. Dr. Burkle cited *Stemm* and *Dobson* to support his position that a release that purports to release all other persons does just that. In considering the applicability of *Stemm* and *Dobson*, we noted:

> ... both of those cases involved joint tortfeasors, each of whom contributed to the original injury. In view of those facts, it is not surprising that this court determined that the plaintiff's release of liability covered all parties involved in the original tort.... Whatever principles may be extrapolated from *Stemm* and *Dobson*, it certainly is not accurate to say that they established a rule to the effect that when a plaintiff executes a release with one tortfeasor utilizing language such as "all" and "every", [sic]

said release also operates as a release of all other tortfeasors.

\* \* \* \* \* \*

We are aware of language in *Stemm* that might arguably be interpreted to support Burkle's contention that this issue should be resolved, as a matter of law, in his favor. That language indicates that a release "is plain and unambiguous as to who the parties intended to release where its terms provide that 'all claims' are given up against 'all persons' in consequence of an accident. Language that releases 'all persons' does just that and is clear as long as no other terms are contradictory." [*Stemm*, 717 N.E.2d at 975.] It must be remembered, however, that in *Stemm* both defendants were allegedly involved in the automobile accident that caused the plaintiff's injuries. Thus, the bases for alleged liability of the two defendants were closely related, and the release of one defendant and "all persons" from further liability for the injury-producing event is reasonably understood to release the other defendant. Here, on the other hand, the allegation of negligence against [the driver] was, at least from [the plaintiff's] perspective, entirely unrelated to Burkle, whose alleged negligence occurred later and in an entirely separate setting. We refuse to adhere to a rigid rule that inclusion of the term "all" in a release with respect to the original tortfeasor operates to release everyone who may subsequently be responsible for exacerbating the original injury. Indeed, such would be inconsistent with sound public policy and with the spirit of [*Huffman* ].

*Id.* at 1148, 1149–50. We also noted that there was no reason to "depart from the *Wecker* presumption that the scope of a release and the parties' intent thereby are questions of fact that should be determined by a jury after considering the relevant evidence." *Id.* at 1150. Accordingly, we reversed the trial court's entry of summary judgment in favor of Dr. Burkle. *Id.*

Here, Cummins has alleged that Smith & Nephew and Dr. McIntosh are successive tortfeasors: Smith & Nephew's alleged negligence in manufacturing the nail is separate from Dr. McIntosh's alleged negligence in prematurely allowing Cummins to return to work and in replacing the nail once it broke. Dr. McIntosh contends that he and Smith & Nephew are joint tortfeasors. *See* Brief of Defendant–Appellee at 18. Regardless of how Dr. McIntosh is classified, however, we reach the conclusion that summary judgment in his favor was improper.

▆ Under the *Depew* interpretation of *Wecker*, where there are successive tortfeasors, the question of whether the parties to a release intended to release other tortfeasors is a question of fact to be determined by a jury after considering relevant evidence. 786 N.E.2d at 1150. The mere fact that a release includes the term "all" is not determinative. *Id.* Where there are joint tortfeasors, it has been held that contradictory references in a release "cloud the intent of the document" and necessitate a factual determination. *Huffman*, 588 N.E.2d at 1267. Although the language of the release herein does not go so far as the release in *Arnold* did in its limiting language, it does include language specifically identifying the litigation against Smith & Nephew. The litigation against Dr. McIntosh was instituted at the same time as the litigation against Smith & Nephew and was on-going at the time the release was signed.[5] If the parties had intended that the release would also include Dr. McIntosh within its terms, the

---

5. Cummins filed a proposed complaint against Dr. McIntosh with the Indiana De- partment of Insurance as required by the Indiana Medical Malpractice Act on the same

litigation against him also would have been identified. Moreover, the release references only the failure of the nail and the date on which that occurred. The allegations against Dr. McIntosh encompass events other than the breaking of the nail and his treatment of Cummins over a greater period of time than that stated in the release. These references contradict the "all other persons" language of the release. Thus, regardless of how we classify Dr. McIntosh in relation to Smith & Nephew, summary disposition was improper as there are factual issues regarding the scope and effect of the release.[6]

### Conclusion

Factual issues exist regarding the intent behind the release, and therefore, the trial court erred in finding as a matter of law that the release barred Cummins' claim against Dr. McIntosh. The trial court's grant of summary judgment in favor of Dr. McIntosh is reversed, and this case remanded to the trial court for further proceedings.

Reversed and remanded.

KIRSCH, C.J., and CRONE, J., concur.

---

day he filed the lawsuit in federal court against Smith & Nephew.

6. Cummins also contends the trial court improperly failed to consider the affidavit he designated in response to Dr. McIntosh's motion for summary judgment concerning his intent in signing the release. Because we hold that summary judgment was improper, we need not reach the issue of whether the parol evidence rule applies in this context.