**Cynthia OGLE, Appellant–Plaintiff,**

v.

**EAST ALLEN COUNTY SCHOOLS and East Allen County Schools Employee Group Benefit Plan, Appellees–Defendants.**

No. 02A05–0701–CV–28.

Court of Appeals of Indiana.

Jan. 22, 2008.

Alan Verplanck, James P. Fenton, Eilbacher Fletcher, LLP, Fort Wayne, IN, Attorneys for Appellant.

Thomas E. Wheeler, II, Maggie L. Smith, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

MAY, Judge.

Cynthia Ogle was treated for Common Variable Immune Deficiency (CVID) using intravenous immunoglobulin replacement therapy (IVIG). Her employer, East Allen County Schools, paid for the treatments through its self-funded employee benefit plan ("the Plan"). The Plan administrator's independent medical reviewers determined the treatment was not medically necessary, and the Plan stopped paying. Ogle sued and the trial court granted summary judgment for the School.

On appeal, Ogle argues there are factual questions as to whether the reviewers found the treatments medically unnecessary.[1] We affirm.

---

[1] As we find there is no genuine issue of fact as to the medical necessity determinations, we need not address Ogle's alternative arguments the use of the independent reviewers violates the Plan's duty of good faith and the policy language allows the Plan too much discretion in denying claims. *See Beck v. City of Evansville,* 842 N.E.2d 856, 860 (Ind.Ct.

## FACTS AND PROCEDURAL HISTORY[2]

Ogle's employer, the East Allen County School system, maintains an employee benefit plan that is self-funded with School and employee contributions. The Plan contracts with a third-party administrator, Employee Plans, Inc., to process claims. For an expense to be covered under the Plan, it must be "Medically Necessary for the diagnosis and treatment of an Illness or Injury." (App. at 263.) To determine medical necessity, the Plan contracts with an organization that has medical professionals from around the country conduct independent reviews. The Plan does not review those decisions. A patient has a right to appeal the reviewer's decision to a committee established by the Plan administrator.

Ogle was diagnosed in 1995 with CVID. Her doctor began treating her with antibody replacement therapy, specifically IVIG, which has been shown effective in some cases. The Plan paid for the treatment until May of 1998,[3] when it asked an independent medical review group to determine whether the therapy was medically necessary. At that time the Plan stopped paying for further IVIG therapy until its medical necessity could be established.

In September 1998, the medical director of the review group found the medical necessity of the treatment "questionable," (*Id.* at 348), but did not feel he could make a final determination. At Ogle's request the Plan had two different doctors independently review her medical records. Both concluded her doctor's diagnosis of CVID was premature and based on an inadequate assessment.

Based on these reviews the Plan administrator told Ogle's doctor in April of 1999 it would not continue to pay for the IVIG. The Plan did continue to pay other costs associated with her treatment. Ogle did not appeal that determination.

In 2001 Ogle saw a new specialist, who believed Ogle should again receive IVIG. In response, the Plan sought another independent medical review, which recommended the request be denied. Ogle appealed and another review was conducted. The reviewer determined Ogle's new doctor had finally run the appropriate tests, but noted the tests revealed Ogle could respond to treatments other than IVIG and Ogle did not suffer from most of the symptoms that would indicate she would benefit from IVIG. The reviewer found IVIG not medically appropriate for Ogle. Ogle appealed to the Plan's insurance committee, which upheld the decision. In August 2002, Ogle filed her complaint alleging the Plan breached its contract with her and acted in bad faith.

In June 2004, Ogle's doctor made a new request for IVIG, noting deterioration in

App.2006) (if a summary judgment can be sustained on any theory or basis in the record, we will affirm), *reh'g denied, trans. denied* 860 N.E.2d 594 (Ind.2006).

Ogle also argues on appeal the Plan's definition of "medical necessity" is ambiguous. Ogle did not allege in her summary judgment pleadings the language regarding medical necessity was ambiguous, and she therefore cannot raise it on appeal. *See Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387 (Ind.Ct. App.2004) (issues not raised before the trial court on summary judgment are waived).

2. We heard oral argument November 16, 2007, at the 40th anniversary conference of the Defense Trial Counsel of Indiana in French Lick. We thank the DTCI for its hospitality and commend counsel for the quality of their advocacy.

3. Ogle discontinued IVIG between April of 1996 and October of 1997 because of its side effects.

Ogle's condition and advances in the therapy. The Plan again sought an independent review. The reviewer determined the therapy was now medically necessary due to Ogle's changed condition, but concluded a lower dose than that recommended by Ogle's doctor was appropriate. The Plan has since covered the cost of the therapy at the lower dosage.

In her complaint, Ogle alleged the Plan breached its contract with her in failing to cover the IVIG and acted in bad faith by denying coverage because the treatments were expensive and likely would continue for a long time. The Plan moved for and was granted summary judgment. The court determined there were no genuine issues of material fact as to whether the Plan properly followed its established procedures in determining whether IVIG was medically necessary to treat Ogle. It also found the Plan had a legitimate reason for denying liability, so Ogle could not establish it acted in bad faith.

## DISCUSSION AND DECISION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rhoades v. Heritage Invs., LLC,* 839 N.E.2d 788, 791 (Ind.Ct.App.2005), *reh'g denied.* When reviewing a summary judgment, we stand in the shoes of the trial court. *Id.* A grant of summary judgment is clothed with a presumption of validity. *Id.*

Ogle argues the trial court erred when it determined the Plan's repeated medical reviews satisfied its contractual obligation to her, because the medical evidence before the court was conflicting. As Ogle did not provide the insurer sufficient information to permit a determination the IVIG treatment was medically necessary, the Plan did not breach its contract with Ogle, and summary judgment for the School was not error.

The School's insurance committee decided at its meeting January 13, 1999 that "there was still a need for another independent medical opinion regarding the medical necessity[.]" (App. at 353.) In a letter to Ogle's doctor it said it "will be requesting copies of all documentation pertaining to [Ogle's] care" and when the documents were obtained it would send them out for an independent medical evaluation. (*Id.*)

Ogle asserts she submitted 85 pages of medical information to the plan, which medical information she says the Plan "lost." (Appellant's Reply Br. at 2.) She says many of those pages had already been submitted to the Plan. (App. at 549–50.) In the "Introduction and Designation of Material Facts" section of her response to the School's motion for summary judgment she asserts her doctor "generated a comprehensive eighty-five page submission which Defendants apparently succeeded in misplacing." (*Id.* at 484–85.) As that information is not in the record before us, we cannot consider it.

The only other evidence Ogle provided the School regarding the medical necessity of the IVIG treatment was a letter from her doctor noting Ogle had been diagnosed with CVID and asserting, "It is vital that Cynthia Ogle continue to take her infusions the [sic] same dose and frequency," (*id.* at 531), and "There is no question that IVIG is indicated for her" because of the CVID diagnosis. (*Id.* at 532.) As explained above, the record does not include designated evidence in the form of medical documentation to support those conclusions.

Two doctors independently reviewed Ogle's medical records for the Plan; both concluded her doctor's diagnosis of CVID was premature and based on an inade-

quate assessment. In April 1999 the Plan told Ogle's doctor it would not continue paying for the treatments and Ogle apparently did not appeal that decision.

The Plan points to its designated evidence of an independent third party review questioning Ogle's diagnosis of CVID, a subsequent evaluation indicating the treatment was not medically necessary, a review after Ogle's appeal in June of 2001 finding the treatment was not "medically appropriate," (*id.* at 424), a determination after another appeal in November 2001 that the most recent review "did not show a change in her condition to warrant" the treatments, (*id.* at 444), and a determination in June of 2004 that the treatment was now medically necessary but at a lower dose than her treating physician had recommended.

We must agree with the Plan's characterization of the evidence Ogle designated as "only hearsay testimony and an incomplete version of the facts which failed to create any genuine issues of material fact."[4] (Br. of Appellees at 18.) As Ogle has not demonstrated there was a genuine issue of material fact as to the medical

necessity of her IVIG therapy, we cannot say summary judgment for the Plan was error. We accordingly affirm.

Affirmed.

BAKER, C.J., and ROBB, J., concur.

---

**4.** Ogle does not respond in her reply brief to the Plan's allegations her designated evidence was hearsay, incomplete, and included "bald conclusions" she has CVID. (Br. of Appellees at 25.) Instead, she relies on conflicts she finds in the Plan's designated evidence. She asserts the first reviewer advised Ogle "might well have CVID and approved [the treating physician's] therapeutic regimen." (Appellant's Reply Br. at 1.) This appears to be a reference to a letter from the reviewer concluding Ogle "appears to tolerate" and "appears to benefit somewhat" from the therapy, (App. at 347), but which says "the Medical Necessity of this treatment is rather questionable" because other possible causes for her condition had not been explored. (*Id.* at 348.) She notes the Plan ultimately resumed payment for the therapy, but with a different treating doctor and at a lower dose. She notes the initial medical review suggested she be examined by an otolaryngologist to rule

out other treatment alternatives, and asserts the otolaryngologist "confirmed the diagnosis of CVID." (Appellant's Reply Br. at 4.) In fact, that doctor did not independently confirm Ogle had CVID; rather, she appears to have noted only that Ogle had previously been so diagnosed. Ogle notes other statements to the effect evidence of whether she had CVID was lacking and that more documentation is needed, but which did not explicitly conclude Ogle did *not* have CVID.

These, she asserts, are "divergent" opinions as to her condition, (Appellant's Reply Br. at 4), and conflict with the Plan's assertion there is no issue of fact as to whether IVIG was "medically necessary." We disagree. While Ogle points to ample evidence she had been diagnosed with CVID, that evidence does not give rise to a genuine issue of material fact as to the "medical necessity" of IVIG therapy to treat the disorder.