SHEEHAN CONSTRUCTION COMPANY, INC., Vincent B. Alig, M.D. and Mary Jean Alig, Individually, Co–Trustees of the Mary Jean Alig Revocable Trust and as Representatives of a Class of all Others Similarly Situated, Appellants–Defendants,

v.

CONTINENTAL CASUALTY COMPANY, Indiana Insurance Company and MJ Insurance, Appellees–Plaintiffs.

No. 49A02–0805–CV–420.

Court of Appeals of Indiana.

June 23, 2009.

David F. McNamar, McNamar & Associates, P.C., Indianapolis, IN, Attorney for Appellants.

Mary K. Reeder, Riley Bennett & Egloff, LLP, Indianapolis, IN, Joseph Borders, Peter G. Daniels, Walker Wilcox Matousek LLP, Chicago, IL, Attorneys for Continental Casualty Co.

Joseph Dietz, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorney for Indiana Insurance Co.

Philip E. Kalamaros, Hunt Suedhoff Kalamaros LLP, St. Joseph, MI, Attorney for MJ Insurance, Inc.

## OPINION

MAY, Judge.

A class of homeowners who alleged their homes were negligently constructed by Sheehan's subcontractors sued Sheehan. Sheehan had a comprehensive general liability ("CGL") policy with Continental. The Class and Sheehan settled, and Continental participated in the mediation that led to the settlement. The settlement was for about $2,800,000, with about $800,000 for attorneys fees and about $2,000,000 for the cost of repairing the homes. The settlement provided the Class would not pursue its claims against Sheehan. Instead, Sheehan assigned to the Class any rights it might have against insurers and non-settling subcontractors.

Continental brought this action seeking a declaration it was not obliged to indemnify Sheehan. Sheehan and the Class answered and counterclaimed, and brought a third-party complaint against Indiana Insurance ("Indiana"), who insured a subcon-

tractor, Somerville Construction. Sheehan also sued its insurance broker, MJ Insurance, for negligent failure to procure insurance. Sheehan, the Class, Indiana, MJ, and Continental all moved for summary judgment, and the trial court granted MJ's, Indiana's and Continental's motions. Sheehan and the Class (collectively "Sheehan") brought this appeal and Indiana cross-appeals.[1]

We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

Vincent and Mary Jean Alig bought a home in a subdivision in Indianapolis where Sheehan was general contractor. They sued Sheehan after they discovered water damage to their home. Sheehan forwarded the complaint to Continental. After other homeowners in the subdivision noticed similar problems, a class was certified.

The damage included water leaks around windows; water stains below windows and on ceilings; discolored carpet; warped floors; roofing materials blowing off during storms; mold below windows, on floors, in crawl spaces, and on the siding; and decay of window frames and OSB sheathing. These problems were caused by the subcontractors' faulty workmanship, which included inadequate flashing and caulking around windows, a lack of house wrap over OSB sheathing and window casements, improperly installed roof shingles, improperly sealed openings in roofs for chimneys and vents, improperly

installed bricks and cement board siding, and improper ventilation of crawl spaces.

The Continental and Indiana policies provide general liability coverage for "property damage" caused by an "occurrence." (Appellants' App. at 242.) "Property damage" is

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 253.) An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 252.)

## DISCUSSION

1. *Property Damage*

▮ The trial court noted the Class' and Sheehan's claims were for the repair and replacement of various structural components of the homes Sheehan built. There was no claim of "bodily injury or damage to any property, other than the structural components of the homes themselves...." (*Id.* at 27.) Accordingly, in granting summary judgment, the court explicitly held "The Continental and Indiana Insurance policies do not provide coverage for the Class/Sheehan's claims as there was no

---

1. We heard oral argument April 7, 2009, in Evansville at the University of Southern Indiana. We thank the University for its hospitality and commend counsel on the quality of their advocacy.

2. Because we affirm summary judgment for the Insurers, we need not address Indiana's challenge on cross-appeal to the denial of its

motion to strike parts of an affidavit by Sheehan's expert, Thomas Corridan, that Sheehan designated in support of its summary judgment motion. Nor do we address the trial court's finding there was no coverage available under the Indiana Insurance policies because Sheehan did not timely notify Indiana of its claims.

'occurrence' and no 'property damage.'" (*Id.*) The trial court was correct.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ogle v. East Allen County Schs.*, 879 N.E.2d 614, 616 (Ind.Ct.App.2008). When reviewing a summary judgment, we stand in the shoes of the trial court. *Id.* A grant of summary judgment is clothed with a presumption of validity. *Id.*

We have on at least two occasions found damage to a construction project due to faulty workmanship or defective materials was not "property damage" for purposes of CGL coverage. In *Amerisure, Inc. v. Wurster Const. Co., Inc.*, 818 N.E.2d 998 (Ind.Ct.App.2004), *clarified on reh'g* 822 N.E.2d 1115 (Ind.Ct.App.2005), a CGL policy defined "property damage" with the same language as that in the policy before us: "[p]hysical injury to tangible property, including all resulting loss of use of that property." *Id.* at 1003. We noted "the use of this terminology in a CGL policy is not a novel incident; rather, this is standard language for CGL policies in this country." *Id.*

The construction of CGL insurance contracts such as the one at issue is based upon two types of risk arising from a contractor's work. The first, business risk, is a result of not performing well (i.e., faulty work) and is borne by the contractor in order to satisfy its customers. The second type of risk is occurrences which give rise to insurable liability. These occurrences are accidental injury to persons or property due to faulty workmanship. In other words, a business risk arises when, for example, "a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result," the poorly-performed work must be repaired or replaced by the contractor. On the other hand, "should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises" which is covered under a CGL policy. Therefore, "injury to persons and damage to other property constitute the risks intended to be covered under the CGL."

*Id.* (citations omitted). We accordingly held the cost of repairing defective exterior finishing on a newly constructed building was not "property damage" because there was no damage to property other than to the project itself. *Id.* at 1004.

In *R.N. Thompson & Associates, Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160 (Ind.Ct.App.1997), *trans. denied* 698 N.E.2d 1191 (Ind.1998), a builder/developer was sued when the roof decking on some buildings was damaged due to degradation of the plywood. The damage was caused by a combination of improper attic venting, dryers venting directly into attics, and roofs being built in a substandard manner. We found claims limited to remedying faulty workmanship or materials do not involve "property damage." 686 N.E.2d at 163. Rather, the cost of repairing faulty workmanship was an "economic loss" not covered by CGL policies. *Id.* at 164.

The *Amerisure* and *R.N. Thompson* panels both relied on *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1279 (Ind.1980), where our Supreme Court explained "property damage" covered by a CGL policy:

The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and

for which the insured may be found liable.... The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

(Quoting Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L.Rev. 415, 441 (1971)). The Court noted the cost of repair or replacement of the insured's own faulty work

> is part of every business venture and is a business expense to be borne by the insured-contractor in order to satisfy customers. It is a business risk long excluded by comprehensive liability policies. Another form of risk in the insured-contractor's line of work is injury to people and damage to other property caused by the contractor's negligence or defective product. It is this risk which the policy in question covers.

408 N.E.2d at 1279. It accordingly held the Indiana Insurance policy did not pro-vide reimbursement to a builder for expenditures required to correct, repair, or replace its own poor workmanship. *Id.*

In the case before us the damage to the Class members' homes was not caused directly by faulty workmanship but by water penetration. In *R.N. Thompson* we found damage to the roof's plywood, caused by excessive heat and moisture brought about by faulty workmanship, was inseparable from the faulty workmanship and was therefore not "property damage." *Id.* Under our reasoning in *R.N. Thompson,* the damage to the Class members' homes cannot be treated as distinct from the underlying faulty workmanship that allowed the water penetration.[3] The policies do not cover the damage to the class members' homes, and summary judgment for the insurers was proper.

### 2. *Insurance Broker Liability*

■ Sheehan procured its CGL insurance through MJ Insurance, a broker. Continental was the insurer from September 1999 through September 2004, and Westfield Insurance Co. was the insurer after that. The trial court held Sheehan's

---

**3.** Because we find the Class suffered no "property damage" as defined by the policy, we need not decide whether the subcontractors' faulty workmanship amounts to an "occurrence" that might be covered by the policies. In *R.N. Thompson* we said that in the context of insurance coverage, an "accident" is "an unexpected happening without an intention or design," 686 N.E.2d at 164, and held degradation of the plywood used as roof decking was the natural and ordinary consequence of the work done by the contractor or under its supervision. As such, it was not an "accident" or "occurrence," but a breach of contract for faulty workmanship and defective materials. *Id.* at 165. CGL policies do not cover "an accident of faulty workmanship but rather faulty workmanship which causes an accident." *Id.* (quoting *DeZutti,* 408 N.E.2d at 1279). The faulty workmanship in the case before us caused no "accident." We acknowledge authority to the contrary from other states which Sheehan offers, but those decisions cannot be reconciled with our Supreme Court's statements in *DeZutti.*

Nor do we find coverage arises because of the 1986 change in the CGL policy form that has, Sheehan asserts, the effect of not *excluding* work performed entirely by subcontractors. Sheehan contends this change reflects an intention on the part of the insurance industry to cover such faulty workmanship in CGL policies, and that we ignored it in *R.N. Thompson* and *Amerisure.* We did not. In *R.N. Thompson* we explicitly recognized the 1986 change in language, 686 N.E.2d at 163 n. 5, but found it irrelevant because there, as in the case before us, there was no "property damage." If the insuring clause does not extend coverage, "one need look no further." *Amerisure,* 818 N.E.2d at 1005 (citing *DeZutti,* 408 N.E.2d at 1278).

claim against MJ for negligent failure to procure insurance was barred by the statute of limitations.[4] We agree.

■ The statute of limitations for such an action is two years from the date the cause of action accrues. Ind.Code § 34–11–2–4 (2004); *Filip v. Block,* 879 N.E.2d 1076, 1082 (Ind.2008), *reh'g denied.* In general, "the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind.1992).

■ When the alleged negligence is failing to advise the insured of the availability of some types of insurance and in failing to secure adequate limits, a claim against an agent for negligent procurement of the wrong coverage begins at the start of coverage if the breach was discoverable at that time through ordinary diligence. *Filip,* 879 N.E.2d at 1082. "We do not hold, however, that the date of coverage is necessarily controlling in every case. The question in this case is at what point the Filips, in the exercise of ordinary diligence, could have discovered that they were underinsured." *Id.* at 1084. The Filips claimed their policy lacked coverage they needed, and some of the coverage had inadequate limits. "All of these alleged problems were ascertainable simply by reading the policy. As a result, the limitations period in this case began to run on or shortly after the activation of the policy...." *Id.* (footnote omitted).

The statute of limitations began to run at the latest on the Sheehan claim in De-cember 2004, when Sheehan received a letter from one insurer, Westfield, denying coverage and another, from Continental, agreeing to defend Sheehan under a reservation of rights. The reservation of rights letter should have alerted Sheehan there were potential insurance coverage problems because in such a letter

> [a]n insurance company reserves its right to deny coverage, in a subsequent declaratory action, while at the same time it defends the insured. "Such is the purpose of a reservation of rights: to allow the insurer to fulfill the broad duty to defend while at the same time investigating and pursuing the narrower issue of whether indemnification will result."

*Wilson v. Continental Cas. Co.,* 778 N.E.2d 849, 852 (Ind.Ct.App.2002) (quoting *Gallant Ins. Co. v. Oswalt,* 762 N.E.2d 1254, 1260 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 690 (Ind.2002)), *trans. dismissed* 792 N.E.2d 44 (Ind.2003). As Sheehan and its counsel received a denial letter and a reservation of rights letter in December 2004, Sheehan was then on notice of coverage problems, and that started the running of the statute of limitations. Sheehan did not bring its claim against MJ until May of 2007, over two years later. Its claim against MJ was therefore barred.

### CONCLUSION

The damage to the class members' homes was not "property damage" covered by the Continental and Indiana policies, and the trial court correctly granted summary judgment for the insurers. Sheehan's action against MJ for negligent failure to procure insurance was brought more than two years after Sheehan, in the

---

4. Both Sheehan and MJ offer argument whether MJ negligently failed to procure insurance for Sheehan. However, the trial court's decision was based only on the limita-tions question. As the trial judgment leaves us with nothing to review as to MJ's negligence, only the limitations issue is addressed here.

exercise of ordinary diligence, could have discovered it might not have had the coverage it expected. Summary judgment for MJ was therefore correct. We affirm the trial court.

Affirmed.

RILEY, J., concurs.

BROWN, J., dissents with separate opinion.

BROWN, Judge dissenting.

I respectfully dissent. I conclude that summary judgment is improper because there is a question of fact regarding whether the Class's and Sheehan's claims are for "property damage" caused by an "occurrence."

A. *Property Damage*

First, there is an issue of fact regarding whether the damages claimed constitute "property damage" under the policies. Sheehan and the Class allege damage caused by the subcontractors' failure to properly seal the houses. This failure allegedly caused damage not only to the windows and the roof, but also to the floors, carpet, and ceilings. Further, Sheehan and the Class claim that it caused mold to accumulate throughout the homes, including near the windows, on floors, and in crawl spaces. I would hold that these types of damages may constitute "property damage" under the policies.

The majority cites *Amerisure, Inc. v. Wurster Construction Co.*, 818 N.E.2d 998 (Ind.Ct.App.2004), *clarified on reh'g* 822 N.E.2d 1115 (Ind.Ct.App.2005), and *R.N. Thompson & Associates, Inc. v. Monroe Guaranty Insurance Co.*, 686 N.E.2d 160 (Ind.Ct.App.1997), *trans. denied*, for its conclusion that Sheehan and the Class do not allege property damage. But these cases are distinguishable because of the types of damages alleged. First, the

claims rejected in *Amerisure* included the cost of replacing and repairing defective materials installed by subcontractors. As that court explained, while the defectively installed materials failed, "there are no allegations that any person or property other than these interconnected systems on the buildings being constructed by Wurster, was damaged due to these defects." 818 N.E.2d at 1004. Similarly, in *R.N. Thompson*, the developer sought damages consisting of the expense it would incur to repair or replace the defectively designed, constructed, inspected, or maintained units. The court held that the plaintiffs had not alleged "property damage" because the claim was not based on damage to property other than the contractor's work. 686 N.E.2d at 163. Here, unlike the plaintiffs in *Amerisure* and *R.N. Thompson*, Sheehan and the Class claim damage to property other than just the defectively installed materials.

The majority also cites *Indiana Insurance Co. v. DeZutti*, 408 N.E.2d 1275 (Ind. 1980). However, the Court in that case held that coverage should be denied based on the exclusions in the insurance policy, not on the definition of "property damage" that is at issue here. In that case, the Court held that Indiana Insurance Company's insurance policy excluded coverage for claims of faulty home construction. The exclusion the Court relied upon denied coverage "to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith...." 408 N.E.2d at 1278. The Court explained that "[t]he language of the exclusion is broad, unambiguous, and all-inclusive. It clearly provides that the insurance does not apply to property damage to work performed by or on behalf of the insured arising out of either the work

or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith." *Id.*

Looking at cases from other jurisdictions, I find that this case is more like the situation presented in *United States Fire Ins. Co. v. J.S.U.B, Inc.,* 979 So.2d 871 (Fla.2007). There, J.S.U.B., Inc. contracted to build several homes. After the homes were completed, the owners discovered damage to the foundations, drywall, and other interior portions of the homes. The damage was caused by subcontractors' use of poor soil and improper soil compaction and testing. The Florida Supreme Court rejected the insurer's contention that there can never be "property damage" in cases of faulty construction. "To the contrary, faulty workmanship or defective work that has damaged the otherwise non-defective completed project has caused 'physical injury to tangible property' within the plain meaning of the definition in the policy." 979 So.2d at 889. The court found in favor of coverage because the case did not involve a claim for the cost of repairing the subcontractor's defective work, but rather a claim for repairing the structural damage to the completed homes caused by the subcontractor's defective work. *Id.* at 890.

The New Hampshire Supreme Court reached a similar conclusion in *High Country Associates v. New Hampshire Insurance Co.,* 139 N.H. 39, 648 A.2d 474 (1994). In that case, a condominium association representing the owners of the condominium sued the developer when moisture seepage into the buildings caused mildew, rotting of the walls, and loss of structural integrity. The court held that the association had made claims for "property damage" because "[t]he damages claimed [were] for water-damaged walls, not the diminution in value or cost of repairing work of inferior quality." 648 A.2d at 477.

Like the plaintiffs in *J.S.U.B.* and *High Country Associates,* the Class and Sheehan seek recovery for damages caused by poor workmanship, not merely the costs of repairing the work.

### B. Occurrence

I would also find that the "property damage" alleged in this case was caused by an "occurrence." The policies provide that an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Appellant's Appendix at 255. Interpreting the same language, the court in *High Country Associates* concluded that the damage alleged—mildew, rotting, and loss of structural integrity—was unexpected and was caused by continuing exposure to moisture seeping through the walls of the units. 648 A.2d at 478. According to the court, "The Association alleged negligent construction that resulted in an occurrence, rather than the occurrence of negligent construction." *Id.* Similarly, in *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.,* 281 Kan. 844, 137 P.3d 486 (2006), the Kansas Supreme Court held that water damage to a home built by Lee Builders and its subcontractors caused by leaking windows constituted an "occurrence." That court explained that the "damage ... is an occurrence because faulty materials and workmanship provided by [ ] subcontractors caused continuous exposure of the home to moisture. The moisture in turn caused damage that was both unforeseen and unintended." *Id.* at 495.

Because the damages in this case are similar to those in *High Country Associates* and *Lee Builders,* I would follow the reasoning of those courts. In this case, the Class and Sheehan also alleged negligence that resulted in an occurrence. Like the damages in *High Country Associates* and *Lee Builders,* the damages al-

leged here, including warped flooring and mold, were unexpected and caused by water leakage.

*Amerisure* held "that defective workmanship that results in damages only to the work product itself is not an occurrence under a CGL policy." 818 N.E.2d at 1005. However, as explained above, the Class and Sheehan alleged damages to property other than that installed by the subcontractors. *Amerisure* therefore did not address the situation at issue in this case. I would therefore hold that damage to property other than that installed by the subcontractors may constitute an occurrence under the policies.

For these reasons, I respectfully dissent and would reverse the trial court's entry of summary judgment and remand for further proceedings.