# FOR PUBLICATION



FILED

Nov 27 2012, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RICHARD A. BIERLY**
New Albany, Indiana

ATTORNEY FOR APPELLEE:

**MICKEY K. WEBER**
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KIRSTAN HAUB, d/b/a )
AMERICAN HANDYMAN SERVICE, )
)
    Appellant-Defendant )
)
           vs. )    No. 10A01-1203-PL-107
)
JENNY ELDRIDGE, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Susan L. Orth, Special Judge
Cause No. 10D01-1012-PL-1325

**November 27, 2012**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Kirstan Haub ("Haub"), d/b/a American Handyman Service ("AHS"), appeals the trial court's denial of his motion for summary judgment against Jenny Eldridge ("Eldridge"). Eldridge cross-appeals.

We reverse and remand.

## ISSUES

Haub raises one issue: Whether the trial court erred in denying his motion for summary judgment.

Eldridge raises one issue: Whether the trial court erred in not granting her summary judgment upon the issues raised by Haub's motion for summary judgment.

## FACTS

Haub, the sole proprietor of AHS, had done various home remodeling and renovation projects for Eldridge since at least 2007. In December of 2007, Haub severed a gas line on Eldridge's property while performing some of the work.

In 2008, Eldridge hired Haub to do additional home remodeling and renovations, including refinishing hardwood floors. Haub commenced the work and submitted invoices to Eldridge. On or about September 29, 2008, Eldridge informed Haub that she had hired another contractor to redo the floors at a cost of $3,000.00 because the finish applied by Haub had peeled.

On or about October 10, 2008, Haub contacted Indiana Farm Bureau Insurance ("IFBI"), through which Haub had a commercial general liability policy (the "Policy"),

2

and reported that Eldridge may assert a claim against him for the work done on the floors. Patrick Mihm ("Mihm"), a claims representative for IFBI, opened a claim, showing the date of loss as September 29, 2008. However, after reviewing the Policy, Mihm informed Haub that the Policy excluded coverage for defects in workmanship.

Eldridge later retained Mickey Weber ("Weber") as her counsel. On May 1, 2009, Weber sent a letter to IFBI, advising IFBI that Eldridge had paid Haub approximately $87,000 "to perform a number of repairs, refurbishments, and improvements . . . ." (App. 34). Weber asserted that "[a] significant portion of the work performed by Mr. Haub was performed in a negligent and unworkmanlike manner" and that, as a result, Eldridge had incurred additional costs in the amount of $3,850 to redo the floors and approximately $10,000 for electrical work. (App. 34). Weber also asserted that Eldridge had "suffered significant inconvenience by being unable to enjoy her home and incurred expenses in housing herself and other members of her household during Mr. Haub's protracted repairs." (App. 34). Weber therefore requested that IFBI contact him to "discuss the possibility of settlement . . . ." (App. 34).

After receiving Weber's letter, Mihm reopened the claim. In a letter dated July 30, 2009, Mihm informed Weber that the Policy did not "apply to the claim with the exception of the Vectren Utilities service repairs of $766.59," a cost that Eldridge had incurred after Haub ruptured a gas line on Eldridge's property in December of 2007, as the Policy covered only "the work of the insured and not . . . the work itself . . . ." (App.

3

62). Referring to an appellate court decision, Mihm reiterated that the Policy "does not apply to the insured's work."[1] (App. 62).

On February 25, 2010, Mihm sent Weber a letter, offering Eldridge "$3,500.00 to conclude her claim," in return for which Eldridge would sign a full and final release of all claims against Haub and AHS. (App. 36). Reiterating that the Policy "does not provide coverage for defective or incomplete work," Mihm based the offer "on the estimated costs associated with obtaining court approval of the coverage denial." (App. 80). Mihm enclosed a full and final release of all claims (the "Release") for Eldridge's signature.

Later that year, Mihm retired from IFBI. On November 10, 2010, Eldridge telephoned IFBI claims representative Robert Moser ("Moser") and told him that she had signed the Release a month earlier but had not received a check. Moser contacted Weber's office regarding Eldridge's telephone call.

On November 10, 2010, Weber's office sent Moser the signed and notarized Release, to which no changes or amendments had been made. The Release provided that Eldridge agreed to

---

[1] Mihm attached this court's opinion, *Sheehan Constr. Co., Inc. v. Cont'l Cas. Co.*, 908 N.E.2d 305 (Ind. Ct. App. 2009), which held that damage to the class members' homes due to faulty workmanship or defective materials was not "property damage" for purposes of commercial general liability coverage. This opinion, however, was vacated when the Indiana Supreme Court granted transfer. Subsequently, in *Sheehan Constr. Co., Inc. v. Cont'l Cas. Co.*, 935 N.E.2d 160, reh'g granted (Dec. 17, 2010), *opinion adhered to as modified on reh'g*, 938 N.E.2d 685 (Ind. 2010) and *reh'g denied*, the Indiana Supreme Court held that a contractor's commercial general liability policy could provide coverage for subcontractors' faulty workmanship, depending on the facts. Specifically, faulty workmanship could constitute an accident under a commercial general liability policy if the faulty workmanship was a product of unintentional conduct.

4

RELEASE AND FOREVER DISCHARGE [Haub, d/b/a AHS,] . . . from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature, in law or in equity, however arising, up to the date of this FULL AND FINAL RELEASE OF ALL CLAIMS and specifically for any injuries, known or unknown, to the person or to property, . . . resulting or to result from an accident which occurred on or about the 29 day of September, 2008 at or near [Eldridge's home].

(App. 26).  The Release further provided:

The terms of this FULL AND FINAL RELEASE OF ALL CLAIMS have been completely read and are fully understood by the undersigned(s), and is/are voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of all claims, disputed or otherwise, and for the express purpose of precluding the commencement or continuation of any litigation by the undersigned(s) against any party RELEASED.

. . . .

This FULL AND FINAL RELEASE OF ALL CLAIMS is the ENTIRE AGREEMENT between the parties and the terms of this RELEASE are contractual and not a mere recital.

(App. 26).

Upon receipt of the signed Release, IFBI issued a check to Eldridge in the amount of $3,500.00.  Eldridge subsequently endorsed and negotiated the check.

On December 6, 2010, Eldridge, by Weber, filed a complaint against Haub, d/b/a AHS.  Eldridge asserted that Haub was "negligent in performing the work contracted for, and as a result," Eldridge's property sustained damage.  (App. 9).  Eldridge also asserted a breach of contract claim, claiming that Haub's "failure to perform the work in question

5

in a good and workmanlike manner" constituted a breach of the parties' contract.[2] (App. 9). Eldridge also alleged unjust enrichment.

Haub filed his answer and affirmative defenses on January 28, 2011. Among other things, he asserted that Eldridge's claim had "been liquidated and released by a written Full and Final Release of All Claims executed by [Eldridge] on October 8, 2010[.]" (App. 12). On July 14, 2011, Haub filed a motion for summary judgment "based upon the undisputed material fact that [Eldridge] has previously fully and finally released . . . all of her claims," (App. 19), "including all claims alleged in th[e] action," against Haub. (App. 54).

Eldridge filed her response on August 15, 2011. Eldridge designated as evidence a letter, dated March 23, 2010, purportedly sent from Weber to Mihm. In the letter, Weber advised Mihm that Eldridge wished to accept IFBI's "offer to settle for the amount of $3,500.00 for the damage insured by [IFBI] (i.e. damage caused by the accident that occurred on or about September 29, 2008)." (App. 81). Weber further advised that Eldridge's "acceptance of this settlement would not preclude her claim against [Haub] for defective or incomplete work" and asked that any release required by IFBI reflect this condition. (App. 81).

Subsequently, Haub designated Moser's affidavit as supplemental evidence. Moser averred that IFBI's files did not "contain the letter from Attorney Weber to Patrick Mihm dated March 23, 2010, and the notes of Patrick Mihm, which record all contacts

---

[2] The parties did not have a written contract.

6

with the claimant or Attorney Weber do not contain reference to the letter of March 23, 2010, or any qualification to the Full and Final Release of All Claims." (App. 94).

The trial court held a hearing on the motion for summary judgment on November 7, 2011. On January 4, 2012, the trial court entered its order, finding that a genuine issue of material fact existed regarding the following:

> 1. Whether the "accident" to which the release refers is AHS's negligence in severing the gas lines in December 2007, or whether it includes damages arising from defective or unworkmanlike improvements by AHS.
>
> 2. Whether [IFBI]'s previously denied coverage for defective or unworkmanlike improvements was nevertheless intended to be included in the $3,500 settlement.
>
> 3. Whether the March 23, 2010 letter sent by Counsel Weber, yet never received by [IFBI], limited the intent of any settlement.
>
> 4. The content and intent of the conversations between the Claims Representative and Counsel Weber and their effect as to any interpretation of the Release.

(App. 106-07). The trial court denied Haub's motion for summary judgment.

Haub filed a petition for interlocutory appeal on March 12, 2012. This court accepted jurisdiction of the interlocutory appeal pursuant to Indiana Appellate Rule 14(B) on April 13, 2012.

### DECISION

Haub asserts that the trial court erred in denying his motion for summary judgment. Specifically, Haub argues that the Release is unambiguous in its release of

7

Haub and AHS from any and all claims asserted by Eldridge and that the trial court erred in considering parol evidence to find the existence of an issue of fact.

Eldridge cross-appeals, asserting that the trial court erred by not granting her summary judgment upon the issues raised by Haub's motion. *See* Ind. Trial Rule 56(B) ("When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party."). Eldridge contends that the Release "did not purport to release Haub individually for the defective and faulty work performed" by him, "and the correspondence between Eldridge and [IFBI] reflect[s] that claims arising from such defective or faulty work were clearly not contemplated in the settlement agreement that was reached." Eldridge's Br. at 8. In the alternative, Eldridge argues that the Release "is ambiguous on its face," and therefore, the trial court properly denied Haub's motion. Eldridge's Br. at 12.

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury*, 671 N.E.2d 113, 116 (Ind. 1996). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Const. Corp.*, 674 N.E.2d 167, 169 (Ind. 1996). "A genuine issue of material fact exists where facts

concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind. Ct. App. 1991).

All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind. 1996). However, once the movant has carried its initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 138 (Ind. Ct. App. 1993), *trans. denied*. If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id*.

Generally, appellate courts uphold releases as releases serve the important public policy of facilitating the orderly settlement of disputes. *Prall v. Indiana Nat. Bank*, 627 N.E.2d 1374, 1377 (Ind. Ct. App. 1994). "Releases are not merely to pay the releasor the first installment on what he should have, leaving the matter open for the releasor to come back for more later. On the contrary, a settlement is made, and a general release taken for the purpose of foreclosing further claims." *Id*.

Releases are contracts, and as with any contract, should be interpreted according to the standard rules of contract law. *Cummins v. McIntosh*, 845 N.E.2d 1097, 1103 (Ind. Ct. App. 2006), *trans. denied*.

9

In general, if the language of a contract is unambiguous, the intent of the parties is determined from the four corners of the document. However, when the language in a contract is ambiguous or uncertain, its meaning is to be determined by the consideration of extrinsic evidence. A contract is ambiguous only where a reasonable person could find its terms susceptible to more than one interpretation.

*Id*. at 1104 (internal citations omitted).

"Courts should interpret a contract so as to harmonize its provisions, rather than place then in conflict." *Haire v. Parker*, 957 N.E.2d 190, 196 (Ind. Ct. App. 2011), *trans. denied*. Thus, all attempts to construe the language of a contract shall be done so as to avoid rendering any words, phrases, or terms ineffective or meaningless. *Id*. Where the terms of a release are unambiguous, "courts must give those terms their clear and ordinary meaning." *Id*.

The parties dispute whether the Release functioned to release only IFBI from Eldridge's claims or whether it functioned to release Haub. Here, the Release specifically provided that Eldridge released and forever discharged *Haub, d/b/a AHS*. There is no ambiguity as to the release of Haub, where the Release specifically named Haub, and only Haub, as the released party. *Cf. Huffman v. Monroe Cnty. Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992) (stating that, in determining whether a release applies to joint tortfeasors, a release shall be interpreted as releasing only those persons clearly identified by its provisions with no "contradictory references").

The parties also dispute the extent of the claims barred by the Release. Haub asserts that by executing the Release, Eldridge "surrender[ed] her right to prosecute any

10

claim against Haub and AHS existing up to the date of execution." Haub's Br. at 16. Eldridge, however, asserts that the Release only applies to "damages resulting from an 'accident' or 'occurrence' as defined by [the Policy]." Eldridge's Br. at 8. Thus, Eldridge maintains that the Release does not cover claims arising from Haub's defective work.

The Release provides for the release of Haub "from any and *all* claims, . . . *however arising*, up to the date of" the Release "*and specifically* for any injuries . . . resulting or to result from an accident which occurred on or about" September 29, 2008, at Eldridge's home. (App. 26) (emphases added). The word "and" is conjunctive and defined "as a function word to indicate connection or addition especially of items within the same class or type . . . ." MERRIAM-WEBSTER DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/and (last visited Oct. 15, 2012).

The plain language of the Release covers all claims Eldridge may have against Haub for faulty or defective work, arising up to and including October 8, 2010, the date Eldridge signed the Release, including, *but not limited to*, any claim that arose on or about September 29, 2008. Given that the Release makes no reference to the Policy or IFBI's coverage under the Policy, we cannot say that the language in the Release limits it to only "claims arising from an 'accident' or 'occurrence' as defined by" the Policy. Eldridge's Br. at 7.

The clear and plain language of the Release continues, providing that the terms of the Release "have been completely read and are fully understood by [Eldridge] . . . for the

11

purpose of making a full and final compromise adjustment and settlement of *all claims, disputed or otherwise*, . . . against [Haub]." (App. 26) (emphasis added). In addition, the Release unambiguously provides that "it is the ENTIRE AGREEMENT between the parties . . . ." (App. 26). There is no contradictory language in the Release regarding its coverage that necessitates a factual determination. Accordingly, we find that the trial court erred in considering parol evidence, where the Release unambiguously releases Haub from any and all claims that Eldridge may have had against him on or before October 8, 2010. *See Prall*, 627 N.E.2d at 1378 (finding claims to be barred by a mutual release where the release did not contain limiting language and the "clear language of the release states it applies to all and any claims or actions"); *but cf., e.g., Cummins*, 845 N.E.2d at 1107 (finding that contradictory references necessitated a factual determination regarding the scope and effect of the release).

We therefore find that the trial court erred in denying Haub's motion for summary judgment and that Eldridge is not entitled to summary judgment. We reverse and remand with instructions that the trial court enter summary judgment in favor of Haub.

Reversed and remanded.

FRIEDLANDER, J. and BROWN, J., concur.

12