## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 07 2020, 6:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANTS PRO SE

Kay Kim
Charles Chuang
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Leslie B. Pollie
Travis W. Montgomery
Carmel, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kay Kim and Charles Chuang, <br> *Appellants-Plaintiffs,* <br><br> v. <br><br> David L. Gadis and Ylanda D. Gadis, <br><br> *Appellees-Defendants* | January 7, 2020 <br><br> Court of Appeals Case No. 19A-CT-1861 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James A. Joven, Judge <br><br> Trial Court Cause No. 49D13-1903-CT-12417 |

**Altice, Judge.**

### Case Summary

[1] In 2017, Kay Kim and Charles Chuang (collectively, Appellants) filed, pro se, a lawsuit against David Gadis for water damage to their condominium unit that

allegedly resulted in 2017 from leaks coming from the upstairs unit owned by Gadis. The parties settled the matter and, on March 6, 2019, Appellants executed a General Release of All Claims (the Release), which expressly released Gadis and all his immediate family members from, among other things, any and all past, present, or future claims that have been or could have been asserted in the action. Less than a week after this first lawsuit was dismissed with prejudice pursuant to the Release, Appellants filed the instant suit against Gadis and his wife (collectively, Appellees) for water damage allegedly caused in 2013 and 2018 by repeated bathroom overflows. Appellees promptly moved for summary judgment based on the Release, and the trial court granted their motion.

[2] Appellants now appeal the grant of summary judgment. Their appellate brief is littered with frivolous, nonsensical arguments and scandalous, impertinent, and racist statements. Moreover, their appellate appendix is generally useless and does not contain the summary judgment pleadings and designated evidence filed by Appellees. In addition to concluding that the trial court correctly granted summary judgment, we sua sponte find that appellate attorney fees are warranted here under Indiana Appellate Rule 66(E). On remand, the trial court is directed to calculate Appellees' reasonable appellate attorney fees and order Appellants to pay these fees.

[3] We affirm and remand.

## Facts & Procedural History

[4]     Appellants own a ground-floor condominium unit in the Village at Eagle Creek in Indianapolis. The unit directly above them is owned by Appellees. Over the years, Kim has complained to Gadis about water damage in various areas of her unit that she believed had been or were being caused by leaks or overflows from above. Kim alleged that such leaks occurred in 2013, 2017, and 2018. In 2013 and 2017, Gadis directed the claims to his insurer, State Farm Fire and Casualty Company (State Farm), which denied the claims after determining that Appellees were not responsible for the damages.

[5]     On August 25, 2017, Appellants filed a complaint against Gadis, as well as Appellants' own insurer, improperly named as Travelers Insurance Company, under cause number 49D10-1708-CT-32768 (the First Litigation). Appellants sought damages for leaks alleged to have occurred in February 2017 and August 2017 affecting the ceiling in their dining room, kitchen, and living room. Appellants settled the matter with their insurer in 2017 and then continued the litigation against Gadis, with pro-se filings too numerous to count.

[6]     In March 2019, Appellants and Gadis settled the First Litigation, with Appellants executing the Release on March 6, 2019. The Release provided in part regarding the release and discharge of claims:

>       a. The Releasing Parties[1] … release and forever discharge
>       Released Parties[2] (including, without limitation, all immediate

---

[1] Defined in the Release as Kim and Chuang.

[2] Defined in the Release as David Gadis and State Farm.

family members) … from any and all past, present, or future claims, demands, obligations, liens, costs, expenses, actions or causes of action of any whatsoever kind … which in any way arise out of the incidents or which have been or could have been asserted in this action ….

b. The Releasing Parties understand and agree that this Agreement specifically includes the release and discharge of any and all claims known and unknown to Releasing Parties upon their acceptance and execution of this Agreement, including, but not limited to, any and all claims known and unknown, anticipated and unanticipated, and expected and unexpected consequences of any damages arising out of the incidents or which could have been asserted in this action, by the Releasing Parties.

****

e. For and inconsideration of the payment described in Section 5 of this Agreement and other valuable consideration, the Releasing Parties agree that they will not initiate any proceeding before any court or administrative agency (whether state, federal, or otherwise) against the Released Parties based on or concerning, in who [sic] or in part, any claim(s) released by this Agreement.

*Appellees' Corrected Appendix Vol. 2* at 37-38. Pursuant to a stipulation of dismissal, the First Litigation was dismissed with prejudice on March 21, 2019.

[7] Six days later, on March 27, 2019, Appellants filed a new complaint against Appellees (the Second Litigation), seeking damages for "repeated Hallway Bathroom Overflow from [Appellees' unit in years] 2013 and 2018." *Appellants' Appendix Vol. II* at 149. Kim had made Gadis aware of these claimed damages

in 2013 and 2018. State Farm investigated and denied the first claim in October 2013, and Gadis did not respond to Kay's multiple emails in October 2018 regarding that year's alleged leak, as the First Litigation was pending and he had directed her in August 2017 to stop contacting him. In the Second Litigation, Appellants sought actual damages of $20,000 for the bathroom to be gutted and rebuilt and punitive damages for the non-use of the bathroom for many years and for alleged "ongoing harassment" by the adult son/tenant of Appellees,[3] whom Appellants did not name as a defendant. *Id*. at 156.

[8] After two enlargements of time,[4] on May 31, 2019, Appellees responded to the (amended) complaint by filing a motion for summary judgment. In support of their motion, Appellees designated three items from the First Litigation – the complaint, the Release, and the order of dismissal. Appellees argued the claims in the Second Litigation were barred as a matter of law by the Release. Appellants filed over 700 pages of documents and designated evidence with the trial court in response to Appellees' summary judgment motion, and they also filed their own motion for summary judgment. In sum, Appellants argued that the Release did not apply to leaks unrelated to the 2017 leaks in their dining room, kitchen, and living room.

---

[3] Appellants alleged that the son deliberately caused the 2018 hallway bathroom stain and that he harassed them by banging on their door and the floor above and by yelling threats, which Appellants indicated the police could do nothing about.

[4] Appellants, directing us to Indiana Appellate Rule 35, assert that the trial court abused its discretion by granting Appellees a second extension of time to respond to the complaint. We are perplexed by this argument because App. R. 35 does not apply to trial courts.

[9] At the conclusion of the hearing on July 26, 2019, the trial court granted summary judgment in favor of Appellees and issued final judgment in their favor.[5] Appellants now appeal.

## Discussion & Decision

[10] We review summary judgment de novo and will affirm the grant of summary judgment where the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (citing Ind. Trial Rule 56(C)). Matters of contract interpretation are particularly well-suited for summary judgment because they generally present questions of law. *In re Indiana State Fair Litigation*, 49 N.E.3d 545, 548 (Ind. 2016). "The meaning of a contract is a question for the factfinder, precluding summary judgment, only where interpreting an ambiguity requires extrinsic evidence." *Id.*

[11] Like all contracts, releases are interpreted according to the standard rules of contract law. *Haub v. Eldridge*, 981 N.E.2d 96, 101 (Ind. Ct. App. 2012). Where contract language is unambiguous, the intent of the parties is determined from the four corners of the document, giving terms their clear and ordinary meaning, and this court may not look to extrinsic evidence to expand, vary, or

---

[5] Appellees quote extensively from a purported transcript of the summary judgment hearing, where the trial court painstakingly attempted to explain the effect of the Release to Kim. Appellants, however, provided only a small part of the transcript in the record before us, effectively ignoring Indiana Appellate Rule 9(F), which provides that an appellant shall request "all portions of the Transcript necessary to present fairly and decide the issues on appeal."

explain the contract. *Buskirk v. Buskirk*, 86 N.E.3d 217, 224 (Ind. Ct. App. 2017); *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied*. "A term is not ambiguous solely because the parties disagree about its meaning." *Celadon Trucking*, 70 N.E.3d at 839. Rather, "[a] contract is ambiguous only where a reasonable person could find its terms susceptible to more than one interpretation." *Haub*, 981 N.E.2d at 102 (quoting *Cummins v. McIntosh*, 845 N.E.2d 1097, 1104 (Ind. Ct. App. 2006), *trans. denied*).

[12] Here, the language of the Release is clear and unambiguous. Appellants released David Gadis and all of his immediate family members from "any and all past, present, or future claims … or causes of action of any whatsoever kind … which in any way arise out of the incidents or which have been or could have been asserted in [the First Litigation] …" *Appellees' Appendix* at 37. Moreover, Appellants specifically indicated in the Release that they understood and agreed that the Release "includes the release and discharge of any and all claims known and unknown to [them] upon their acceptance and execution of this Agreement, including, but not limited to, any and all claims known and unknown, anticipated and unanticipated, and expected and unexpected consequences of any damages arising out of the incidents or which could have been asserted in this action …." *Id.*

[13] Appellants attempt to limit the effect of the Release to the two leaks that were the basis of the First Litigation by claiming that they would be "out of our mind" to sign a release of claims not directly related to the First Litigation. *Appellants' Brief* at 15. Their argument is meritless, as the Release plainly did

just that.  It released any and all claims arising out of the incidents (defined in the Release as the 2017 leaks) *or which could have been asserted* in the First Litigation.  When executing the Release in 2019, Appellants were fully aware of the claims made in the Second Litigation, which was initiated less than a week after the First Litigation was dismissed with prejudice.  In fact, Appellants had notified Gadis of the alleged bathroom leaks in 2013 and 2018, and State Farm had denied a related claim in 2013.

[14]  The claims raised in the instant action could have been asserted in the First Litigation and are, therefore, barred by the Release as a matter of law.  The trial court properly granted summary judgment in favor of Appellees.

[15]  Appellants also add at the end of their appellate brief an unsupported claim that the grant of summary judgment violated Article 1, Section 20 of the Indiana Constitution,[6] as well as federal due process.  Appellants present no cogent argument, as exemplified by the following bizarre excerpts from their brief argument on this point:

> It seems that between the Court and Appellees/Defendants' motion to dismiss is "code talk" like a butcher who catches a chicken out of coop and slit its throat before the dawn; so, it cannot cry to alarm the universe when the new day begins…. Appellants/Plaintiffs designate former suit defense counsel … as "Hostile" witness that he prolong [sic] the litigation for two more years with lies and numerous false accusation [sic] against us during [the First Litigation]; so, he can make more money for his

---

[6] Article 1, Section 20 provides: "In all civil cases, the right of trial by jury shall remain inviolate."

client. He sucked the blood out of us – white skin color outside with deepest black conscious of serial killer.

*Appellant's Brief* at 22-23. This issue is waived.

[16] Finally, we sua sponte consider whether damages should be assessed against Appellants pursuant to App. R. 66(E). This rule permits us to assess damages, including attorney fees, "if an appeal, petition, or motion, or response, is frivolous or in bad faith." *Id*. We exercise this discretion with extreme restraint and award such damages only in "instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Sickafoose v. Beery*, 116 N.E.3d 486, 495 (Ind. Ct. App. 2018) (quoting *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003)). "A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *See Picket Fence Property Co. v. Davis*, 109 N.E.3d 1021, 1033 (Ind. Ct. App. 2018), *trans. denied*.

[17] While we are generally reluctant to grant an award of appellate attorney fees, we conclude that such an award is warranted here given the frivolous nature of this appeal and Appellants' bad-faith filings. Appellants have pursued this matter despite the clear and unambiguous language of the Release and have presented arguments "utterly devoid of all plausibility." *See id*. Their brief also includes nonsensical accusations against Appellees' counsel that he somehow defrauded and misled the court by his designation of evidence in support of Appellees' motion for summary judgment, irrelevant claims that Appellees' son

has an extensive criminal record and is mentally ill, unsupported and scurrilous claims that the trial court acted unethically during the summary judgment hearing,[7] and several strange, racist statements regarding black police officers and other black individuals. Moreover, Appellants intentionally failed to provide us with a complete transcript of the summary judgment hearing and did not include in their (nearly 500-page) appendix the Appellees' summary judgment filings.[8] The appendix they did provide is full of irrelevant materials along with an indecipherable table of contents.

[18] In summary, we affirm the grant of summary judgment and find that appellate attorney fees are warranted. We therefore remand to the trial court for a hearing to determine the amount of reasonable appellate attorney fees.

[19] Judgment affirmed and cause remanded.

Robb, J. and Bradford, C.J., concur.

---

[7] In one of their many post-brief filings on appeal, Appellants baselessly allege that the trial judge conspired with Appellees' counsel to make money for the court reporter by requiring Appellants to order the transcript of the summary judgment hearing rather than allowing them to prepare a statement of the evidence pursuant to Indiana Appellate Rule 31(A). The trial court, however, correctly ruled that App. R. 31(A) did not apply here because a transcript was available.

[8] The purpose of the appendix in civil appeals is to provide us "those parts of the Record on Appeal that are necessary for the Court to decide the issues presented." Ind. Appellate Rule 50(A)(1). Thus, when appealing from a summary judgment ruling, "appellants should include in their appellant's appendix all documents relating to the disposition of the motion for summary judgment, including any documents that the appellee designated." *Webb v. City of Carmel*, 101 N.E.3d 850, 856 n.3 (Ind. Ct. App. 2018). Failure to include all necessary summary judgment materials can result in dismissal or waiver of issues on appeal. *See Hughes v. King*, 808 N.E.2d 146, 148 (Ind. Ct. App. 2004); *Yoquelet v. Marshall County*, 811 N.E.2d 826, 830 (Ind. Ct. App. 2004).